684 So.2d 729 (1996)
Frederick W. CUMMINGS-EL, Appellant,
v.
STATE of Florida, Appellee.
No. 82349.
Supreme Court of Florida.
September 26, 1996.
Rehearing Denied December 10, 1996.
*730 John H. Lipinski of the Law Offices of John H. Lipinski, Miami, for Appellant.
Robert A. Butterworth, Attorney General and Fariba N. Komeily, Assistant Attorney General, Miami, for Appellee.
PER CURIAM.
We have on appeal the judgment and sentence of the trial court imposing the death penalty on Frederick W. Cummings-El. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const. We affirm.
The defendant, Fred Cummings-El dated the victim, Kathy Good, for a short period and the two lived together for several months. After the relationship ended, Cummings-El harassed Good and she eventually obtained a restraining order after he assaulted her at a neighbor's house. He then made numerous verbal threats, such as: "Kathy, I'm going to kill you. Kathy, I'm going to kill you[]"; and "I love her. If I can't have her, nobody [can] have her"; and finally "If I can't have you, ain't nobody going to have you."
Cummings-El broke into Good's home in the early morning hours of September 16, 1991, and stabbed her several times while she was sleeping, killing her. Several people heard Good's screams and saw Cummings-El at the scene. Good's eight year-old son, Tadarius, was asleep in bed with his mother and awoke to see Cummings-El "punching" his mother. Good's twenty year-old nephew, Michael Adams, was asleep on the floor of Good's bedroom and saw Cummings-El fleeing from the house. And Good's mother, Daisy Adams, confronted Cummings-El as *731 he was leaving the bedroom. Cummings-El, whose face was only one or two feet from Daisy's, shoved Daisy to the ground and ran. Good then staggered from the bedroom and collapsed in her mother's arms, saying "Fred, Fred."
Cummings-El was charged with first-degree murder and armed burglary. The defense presented no evidence or witnesses and Cummings-El was convicted as charged. During the penalty phase, Daisy and Michael Adams testified for the State concerning the duration of Good's state of consciousness after the stabbing. Two of Cummings-El's sisters testified for the defense, saying that Cummings-El was good to family members, was not violent, and was not guilty. The court followed the jury's eight-to-four vote and imposed the death sentence, finding four aggravating circumstances[1] and no statutory mitigating circumstances. The court considered the testimony of Cummings-El's sisters in mitigation, but noted that this testimony "isn't based on fact or ... reality as reflected by the evidence." Cummings-El raises six issues.[2]
We find that Cummings-El's first three claims were not preserved for review. See Turner v. State, 645 So.2d 444 (Fla.1994) (claim that court erred in excusing for cause death-qualified juror requires contemporaneous objection); Stewart v. State, 620 So.2d 177 (Fla.) (claim that court erred in allowing comment on defendant's right to remain silent requires contemporaneous objection), cert. denied, 510 U.S. 980, 114 S.Ct. 478, 126 L.Ed.2d 429 (1993); Davis v. State, 620 So.2d 152 (Fla.1993) (claim regarding wording of "heinous, atrocious, or cruel" aggravating circumstance requires contemporaneous objection), cert. denied, 510 U.S. 1170, 114 S.Ct. 1205, 127 L.Ed.2d 552 (1994).
Cummings-El asserts as his fourth point that the court erred in finding that the killing was heinous, atrocious, or cruel. We disagree. The record contains voluminous evidence of suffering. Good sustained numerous stab wounds, several of which were defensive, and the medical examiner testified that her death was caused by her lungs filling with bloodshe drowned in her own blood. Eyewitnesses said Good was conscious for several minutes after the stabbing and asked what was taking the paramedics so long. Good had a substantial period of time in which to contemplate her impending doom. We find no error.
Cummings-El next contends that this was a hot-blooded crime of passion and that the court erred in finding the killing cold, calculated, and premeditated. We disagree. As the court pointed out in its sentencing order, the record is replete with evidence of heightened premeditation. Several weeks before the murder, Cummings-El put a gun to Good's face and told her he was going to kill her. Two days later, Cummings-El kicked in the door at Good's friend's house, punched Good, twisted her arm behind her back, broke her wrist, kicked her, stomped on her, threw a TV on her, and promised he would kill her. Two weeks later, Cummings-El swore to Good that if he could not have her no one could. On the night of the murder, Cummings-El armed himself with a knife, waited outside Good's home until she arrived at 5:30 a.m., broke into her house after she was asleep, and attacked her in her sleep. We find no error.
Finally, Cummings-El claims that his death sentence is disproportionate. We disagree. See, e.g., Henry v. State, 649 So.2d 1366 (Fla.1994) (death sentence proportionate in killing of estranged wife where trial court found two aggravating circumstances and no mitigating circumstances), cert. denied, ___ U.S. ___, 115 S.Ct. 2591, 132 *732 L.Ed.2d 839 (1995); Byrd v. State, 481 So.2d 468 (Fla.1985) (death sentence proportionate in killing of wife where trial court found three aggravating circumstances and one mitigating circumstance), cert. denied, 476 U.S. 1153, 106 S.Ct. 2261, 90 L.Ed.2d 705 (1986). In the present case, the trial court found four aggravating circumstances and virtually nothing in mitigation. We find no error.
Based on the foregoing, we affirm Cummings-El's convictions and sentences.
It is so ordered.
OVERTON, SHAW, GRIMES, HARDING and WELLS, JJ., concur.
KOGAN, C.J., concurs as to the conviction and concurs in result only as to the sentence.
ANSTEAD, J., concurs as to the conviction and concurs in result only as to the sentence.
NOTES
[1] The court found that Cummings-El had been convicted of a prior violent felony; that the murder was committed in the course of a burglary; that the killing was especially heinous, atrocious, or cruel; and that the killing was committed in a cold, calculated, and premeditated manner.
[2] Cummings-El claims that the court erred in the following matters: 1) in striking two jurors for cause; 2) in commenting on the defendant's right to remain silent; 3) in instructing on the heinous, atrocious, or cruel (HAC) aggravating circumstance; 4) in finding HAC applicable; 5) in finding the cold, calculated, and premeditated (CCP) aggravating circumstance applicable; 6) in imposing death in this domestic case.