819 So.2d 705 (2002)
Allen Ward COX, Appellant,
v.
STATE of Florida, Appellee.
No. SC00-1751.
Supreme Court of Florida.
May 23, 2002.
Rehearing Denied July 23, 2002.
*708 James B. Gibson, Public Defender, and Christopher S. Quarles, Assistant Public Defender, Seventh Judicial Circuit, Daytona Beach, FL, for Appellant.
*709 Robert A. Butterworth, Attorney General, and Stephen D. Ake, Assistant Attorney General, Tampa, FL, for Appellee.
PER CURIAM.
We have on appeal a judgment of conviction of first-degree murder and a sentence of death. We have jurisdiction. See art. V, § 3(b)(1), Fla. Const.

Background
On February 5, 1999, a grand jury indicted Appellant, Allen Ward Cox, for premeditated murder and battery which occurred in a detention facility.[1] The charges against Cox resulted from a chain of events within the Lake Correctional Institute ("LCI") that culminated in the death of Thomas Baker and an assault upon Lawrence Wood. At trial, the State presented the testimony of numerous corrections officers and inmates regarding the circumstances surrounding the murder of Baker, who was also a LCI inmate. On December 20, 1998, the appellant discovered that someone had broken into his personal footlocker and stolen approximately $500. Upon making this discovery, Cox walked out onto the balcony of his dorm and announced that he would give fifty dollars to anyone willing to identify the thief. He also indicated that when he discovered who had stolen from him, he would stab and kill that person, and that he did not care about the consequences.
During the prison's lunch period on December 21, the appellant called Baker over to him, and then hit him with his fists to knock him down. During the attack, the victim continuously attempted to break free from Cox, and also denied stealing from him multiple times. At a lull in the beating, the appellant said, "This ain't good enough," and stabbed Baker with an icepick-shaped shank[2] three times. After the stabbing, Appellant walked away stating, "It ain't over, I've got one more ... to get." He then walked behind the prison pump house and hid the shiv in a pipe. Cox proceeded from the pump house to his dorm, where he encountered Donny Cox (unrelated to the appellant). There, Appellant questioned him about his stolen money and told him that if Cox had his money, he would kill him also. Following this exchange, the appellant returned to his cell, where he next attacked his cellmate, Lawrence Wood, advising him that Wood was "lucky I put it up, or I'd get [you]."
While the appellant was returning to his cell, the stabbing victim fled the attack scene and ran to corrections officers in a nearby building. The officers present at the time testified at trial that Baker had blood coming from his mouth, and that he was hysterically complaining that his lungs were filling with blood. Baker also responded to the prison officials' questions regarding who had attacked him by saying, "Big Al, Echo dorm, quad three." Although the corrections officers attempted to expedite emergency treatment of the victim by placing him on a stretcher and carrying him on foot to the prison medical center, Baker died before arriving at the hospital.
Doctor Janet Pillow testified that upon her autopsy of the victim, she found that the victim had been stabbed three times. Two of the wounds inflicted were shallow punctures of the lower torso, but the fatal wound had entered the victim's back and traveled through the chest cavity, between *710 two ribs, and finally pierced the lungs and aorta. She testified that a conscious person with this wound would suffer from "air hunger," and would be aware of the "serious danger of dying." She described the wound as being approximately 17.5 centimeters deep, although only two millimeters wide. Doctor Pillow verified that the shank found by the pump house was consistent with the victim's injuries, despite the fact that the wound was deeper than the length of the weapon. She attributed the discrepancy between the length of the weapon and the depth of the wound to the elasticity of human tissue.
The appellant also testified, contending that all of the previous witnesses were correct, except that they had not seen what truly happened when he, Baker, and Vincent Maynard, a third inmate, were close together. According to Cox, it was he who had in fact dodged Baker and Maynard's attempts to stab him, and it was Maynard who actually stabbed Baker in the back accidentally. In Cox's version of the events, he had only struck the victim because he was defending himself from both of the other attacking men. Following the conclusion of the guilt phase testimony and argument, the jury deliberated, apparently rejected the view of the evidence offered by Cox, and found the appellant guilty of first-degree murder.
After hearing the penalty phase testimony presented by both the defense and the prosecution, the jury deliberated and recommended a sentence of death by a vote of ten to two. Following a Spencer[3] hearing, the trial court followed the jury's recommendation and sentenced Cox to death, finding four aggravating circumstances.[4] While the court found no statutory mitigating factors, it found and considered numerous nonstatutory mitigators.[5]
*711 On appeal, Cox raises ten claims[6]we address each in turn.

Discussion

I. Discovery Violation
At trial, Inspector Cornelius Faulk of the Florida Department of Corrections testified regarding his investigation of Baker's murder. He relayed to the jury his investigatory methods, and during his description of an interview with the appellant, he said that Cox told him, "I heard you found a weapon." The substance of the conversation was important to Inspector Faulk because until the time of this statement, Cox had been in administrative confinement. Despite being isolated, Cox detailed for Faulk exactly where the weapon had been hiddena description that matched the location where the suspected murder weapon had been discovered by corrections officers. On cross-examination, the defense asked Faulk why the "I heard you found a weapon" quote was not included in his investigation notes, and had not been disclosed to the defense during his deposition.[7] The defense then moved for a mistrial based upon this discovery violation, a Richardson[8] inquiry was held, and the court denied the motion.
The appellant asserts that the State's failure to turn this statement over to the defense prior to trial was certainly a violation of Florida Rule of Criminal Procedure 3.220(b)(1)(C), and that this misconduct prejudiced the defense because the defense *712 theory "embraced the shank found in the pipe" as a weapon belonging to Cox that could not possibly have caused the death of Baker. Additionally, Cox asserts that the introduction of the statement enabled the State to undermine this theory of defense by arguing that Cox had heard about the shorter weapon and wanted to encourage the investigators to focus on it, but had actually killed Baker with a different, longer knife.
As the trial court held a Richardson hearing in response to the appellant's motion for a mistrial, its decision is subject to reversal only upon a showing that it abused its discretion. See State v. Tascarella, 580 So.2d 154, 157 (Fla.1991). However, where the State commits a discovery violation, the standard for deeming the violation harmless is extraordinarily high. A defendant is presumed to be procedurally prejudiced "if there is a reasonable probability that the defendant's trial preparation or strategy would have been materially different had the violation not occurred." Pomeranz v. State, 703 So.2d 465, 468 (Fla.1997) (quoting State v. Schopp, 653 So.2d 1016, 1020 (Fla.1995)). Indeed, "only if the appellate court can say beyond a reasonable doubt that the defense was not procedurally prejudiced by the discovery violation can the error be considered harmless." Id.
During the Richardson hearing, both attorneys questioned Faulk about why he had neither included the statement in his investigatory journal nor disclosed the statement during his deposition. Faulk advised the court that he had not made his notes on the conversation until after Cox had left the room, and that he thought the substance of the conversation which addressed the description of the weapon provided by Cox (which was included in his notes) was more important than any statement Cox may have used to simply initiate the conversation. The trial court concluded that no discovery violation had occurred, and even if one had occurred, it was inadvertent.
Clearly, under Rule of Criminal Procedure 3.220(b)(1)(C), the State was obligated to disclose the substance of this oral statement to the defense. See Fla. R.Crim. P. 3.220(b)(1)(C) ("[T]the prosecutor shall ... disclose to the defendant ... the substance of any oral statements made by the defendant ...."). Thus, we must conclude that a discovery violation occurred here. It is just as plain, however, that the State's discovery violation here was inadvertent. The State turned over all of Faulk's investigatory materials to the defense, and Faulk's somewhat confusing deposition statements were likely the result of a misunderstanding of the term "evidence," as the context of the particular questions demonstrated. The State explained to the trial court that Faulk probably interpreted the term with reference to physical evidence beyond the substance of the appellant's statements. Since Inspector Faulk was not aware of physical evidence or anything else independent of Cox's oral statement, his deposition answers were not intended to be evasive or misleading. The investigatory materials contained the entirety of Cox's description of the knife the most important component of Cox's statements to Faulkand only omitted the appellant's conversation-opening remark.
Although we conclude that an inadvertent discovery violation occurred here, an examination of the record reveals that the defense was not procedurally prejudiced by the discovery violation. The appellant asserts that since the State did not disclose the statement, the defense "embraced the shank found in the pipe." Thus, introducing this statement at trial allowed the State to "shift away from the theory that the found knife was absolutely *713 the actual murder weapon," and argue that the defendant had possibly used a different weapon to murder Baker. While this theory of prejudice to the defense may be plausible in principle, the appellant's rendition of what actually occurred at trial is not supported by the record. During Cox's trial, the State consistently asserted that Cox killed Baker with the weapon that had been found by the prison pump house.[9] Since the appellant's theory of defending himself was just as viable after Inspector Faulk's testimony as it was prior to the introduction of this evidence, and Cox described and consistently claimed a relationship to the discovered shiv, we can confidently "ascertain beyond a reasonable doubt that [the State's discovery violation] did not materially hinder the defendant's trial preparation." Pender v. State, 700 So.2d 664, 666 (Fla.1997).
As no prejudice resulted from the State's discovery violation, the trial court did not abuse its discretion in refusing to grant a mistrial. See Trease v. State, 768 So.2d 1050, 1053 n. 2 (Fla.2000) ("Discretion is abused only `when the judicial action is arbitrary, fanciful, or unreasonable, which is another way of saying that discretion is abused only where no reasonable [person] would take the view adopted by the trial court.'") (quoting Huff v. State, 569 So.2d 1247, 1249 (Fla.1990)). Thus, we find the appellant's arguments here meritless.

II. Violation of the Order in Limine
In preparation for the testimony of the witnesses to the appellant's "reward announcement," the trial court granted a defense motion in limine to preclude the State from introducing any evidence of the appellant's statement during his proclamation that he did not care about the consequences of killing the thief, because he was already serving two life sentences. To ensure compliance with the order, the court instructed the State to inform all of its witnesses of the ruling, and the court also did so before each of them testified. All of the State's witnesses complied with the order.
During the defense case-in-chief, the appellant's attorneys elicited the testimony of Vincent Maynard, another LCI inmate. After an initial period of neutral direct examination, the defense began to explicitly attempt to blame Maynard for the death of the victim. The defense proffered reverse Williams[10] rule evidence of Maynard's prior crimes, and started to question him in an openly hostile manner, resulting in an argumentative exchange of questions and answers between the examining attorney and witness. Not long after direct examination in the presence of the jury commenced, Maynard responded to a wholly unrelated but hostile line of questioning by saying, "Sir, he has two life sentences already." The defense moved for a mistrial, however, the court denied this motion and gave the following curative instruction:
Ladies and gentlemen, you are instructed that the sentence that Mr. Cox was serving at Lake Correctional Institution is not relevant to this case in any way. He has never been convicted nor is he serving any sentence for homicide or any type of murder.
*714 The appellant contends that this situation is similar to the circumstances addressed by the Fourth and First District Courts of Appeal in Bozeman v. State, 698 So.2d 629 (Fla. 4th DCA 1997), and Thomas v. State, 701 So.2d 891 (Fla. 1st DCA 1997). In each of these cases, a witness for the State was wrongfully allowed to relay to the jury that the defendant was housed in a portion of the correctional facility "reserved for the more violent inmates." Thomas, 701 So.2d at 892 (internal quotation marks omitted); see also Bozeman, 698 So.2d at 630 (witness told the jury that the defendant was housed in a "special management unit" where the "worst behaved ... violent ... inmates" resided). As the juries in those cases were extraordinarily likely to infer from such testimony that the defendants had committed the acts of violence of which they were accused, each court of appeal reversed the defendant's conviction and remanded for a new trial. See Bozeman, 698 So.2d at 632; Thomas, 701 So.2d at 893.
A close reading of Bozeman and Thomas, however, reveals that the information related to the jury in both cases was critical to the prosecution's factual theories, because both of the defendants were accused of attacking someone and both asserted at trial that they were only defending themselves. See Bozeman, 698 So.2d at 630; Thomas, 701 So.2d at 892. The fact of being housed in a particular section was used to enhance a predisposition for violence. In the instant case, the fact that Cox was serving two life sentences was certainly not critical to the State's case, and was not related to its theoriesthe jury already knew that he was an inmate at the Lake Correctional Institution where the events occurred. Additionally, defense counsel knew and assumed the risks of argumentatively questioning an openly hostile witness, and chose to do so in an extraordinarily combative manner. While the defense may have been chagrined that the jury was informed that the appellant was serving two life sentences due to the defense strategy, this information did not "vitiate the entire trial." Duest v. State, 462 So.2d 446, 448 (Fla.1985). Therefore, a mistrial was not proper. See id.; Ferguson v. State, 417 So.2d 639, 641 (Fla.1982) ("A motion for mistrial is addressed to the sound discretion of the trial judge and the power to declare a mistrial and discharge the jury should be exercised with great care and should be done only in cases of absolute necessity."). The trial court properly addressed the situation presented by giving the jury a proper curative instruction and proceeding with the trial. See Jackson v. State, 702 So.2d 607 (Fla. 5th DCA 1997); Riley v. State, 367 So.2d 1091, 1092 (Fla. 3rd DCA 1979). As the trial court did not abuse its discretion by denying the defense's motion for a mistrial here, see Goodwin v. State, 751 So.2d 537, 546 (Fla.1999) ("a trial court's ruling on a motion for mistrial is subject to an abuse of discretion standard of review"), we deem this claim meritless.

III. Pretrial Orders Regarding Mental Health Expert
Prior to trial, the defense failed to give timely notice of its intent to present expert testimony of mental mitigation. Defense counsel subsequently moved to extend the time allowed under Florida Rule of Criminal Procedure 3.202 to provide this information to the State, and the State acquiesced to this request, provided that the defense would turn over the expert's report and a copy of her notes and test results prior to her scheduled deposition.[11] The trial court memorialized the *715 agreement in an order dated February 23, 2000.
On February 28, 2000, the State informed the trial court that Dr. McMahon (the defense expert) had not turned over any of the information due the State prior to her deposition. After a brief discussion, the parties agreed that Dr. McMahon would turn over the materials to the State's expert witness. After Dr. McMahon's deposition, the State notified the trial court that she had indicated that she did not plan to prepare a written report unless ordered to do so. At this point, the defense objected to the entire procedure. The State responded by reminding the court of the prior agreement and the fact that the objection was moot because Dr. McMahon's deposition had already taken place. The court denied the State's motion, but signed an order requiring McMahon to turn over her notes and testing materials.
It is plain to this Court that it was the intention of both parties that Dr. McMahon turn over her materials to the State and be deposed prior to trial. Certainly, any objection to this procedure was waived by the defense team's agreement to provide the materials on behalf of its client. Under Florida law, "[a] party may not invite error and then be heard to complain of that error on appeal." Pope v. State, 441 So.2d 1073, 1076 (Fla.1983). Here, the "error" asserted by the appellant was not only invited, it was fully discussed, agreed to, and officially sanctioned by the trial court in two orders. At this late stage in the proceedings, the appellant certainly cannot assert that the trial court prejudiced his case by approving the arrangement between his lawyers and the State. We deny relief based upon this claim.

IV. Stipulation to Prior Violent Felony Convictions
At the outset of the penalty phase, the defense renewed its offer to stipulate to the previous violent felony and under sentence of imprisonment aggravators, but the court ruled that the State was entitled to decline the offer and present evidence concerning the prior felonies. The State then elicited testimony from Mary Louise Hamilton and Michael Bishop, both of whom were working at a convenience store the appellant robbed in 1980. Next, Judith and Earl Turner testified regarding the appellant's burglary of their home, during which he attacked the couple as they slept, covering Mrs. Turner's face with his hand while striking Mr. Turner in the head with a three-hole punch.
Finally, the State presented Bonnie Primeau to testify with regard to a sexual assault perpetrated upon her in 1989. During the attack, she was dragged out of a convenience store, pushed over a wall (resulting in her leg being broken), endured Cox's unsuccessful attempts to orally and anally rape her, and was then vaginally raped by Cox. Our examination of the record reveals that each of these witnesses *716 tersely related the crimes committed against them, and each was able to do so without any emotional display.
Appellant asserts that the introduction of this evidence was contrary to the holding of Old Chief v. United States, 519 U.S. 172, 117 S.Ct. 644, 136 L.Ed.2d 574 (1997), and resulted in a deprivation of his rights to due process and a fair trial. Both Old Chief and this Court's decision implementing Old Chief in Florida, Brown v. State, 719 So.2d 882 (Fla.1998), make their holdings clear:
[W]hen requested by a defendant in a felon-in-possession of a firearm case, the trial court must approve a stipulation whereby the parties acknowledge that the defendant is, without further elaboration, a prior convicted felon.
Id. at 889. The United States Supreme Court decision turned on the Court's conclusion that in cases where "the point at issue is a defendant's legal status," the probative value of live testimony describing the defendant's prior felony is outweighed by the risk of unfair prejudice such evidence also carries. See Old Chief, 519 U.S. at 185-92, 117 S.Ct. 644. While both opinions addressed broader issues in the form of dicta, this Court explicitly limited its holding to felon-in-possession of a firearm cases. See Brown, 719 So.2d at 889.
It is clear that this Court has not construed Old Chief to have established a rule of law that those found guilty of first-degree murder may simply stipulate to prior violent felony convictions and thereby prohibit the State from introducing any evidence thereof whatsoever. In Elledge v. State, 706 So.2d 1340 (Fla.1997), a case decided eight months after the Supreme Court's Old Chief decision, we stated:
Elledge next asserts that the trial court erred in allowing the state to introduce the details of two prior violent felony convictions ... because he offered to stipulate to their validity. This issue has been decided adversely to Elledge. We likewise find from our review of the record that the details of the two prior homicides did not become a feature of the case. Thus, we find no error.
Id. at 1344 (citations omitted); see also Rhodes v. State, 547 So.2d 1201 (Fla.1989); Tompkins v. State, 502 So.2d 415 (Fla. 1986).
We have consistently stated that "any relevant evidence as to the defendant's character or the circumstances of the crime is admissible [during capital] sentencing" proceedings. Stano v. State, 473 So.2d 1282, 1286 (Fla.1985); see also Rhodes, 547 So.2d at 1204 ("Testimony concerning the events which resulted in the [prior] conviction assists the jury in evaluating the character of the defendant and the circumstances of the crime so that the jury can make an informed recommendation as to the appropriate sentence."); § 921.141(1), Fla. Stat. (2001) ("In the [capital sentencing] proceeding, evidence may be presented as to any matter that the court deems relevant to ... the character of the defendant ...."). Thus, the holdings of Old Chief and Brown are not properly analogized to this capital sentencing proceeding, where "the point at issue" is much more than just the defendant's "legal status."
As "[a]dmission of evidence is within the discretion of the trial court and will not be reversed unless there has been a clear abuse of that discretion," Ray v. State, 755 So.2d 604, 610 (Fla.2000), there is no basis to reverse the ruling of the court below admitting testimonial evidence of the appellant's prior violent felonies at trial. This evidence was not emphasized to the level of rendering the prior offenses *717 a central feature of the penalty phase.[12]See Rodriguez v. State, 753 So.2d 29, 44-45 (Fla.2000); Finney v. State, 660 So.2d 674, 683 (Fla.1995). Therefore, we affirm the trial court's decision allowing the admission of this evidence.

V. Prosecution's Misstatements of Law and Improper Argument

Misstatements of Law
During jury selection, the prosecutor misstated Florida law by advising the prospective jurors that if "the evidence in aggravation outweighs the evidence in mitigation, the law says that you must recommend that Mr. Cox die." (Emphasis supplied.) The substance of this statement was repeated five times to the jury, four times during voir dire and once during closing argument. It is unmistakable that these statements are improper characterizations of Florida law regarding the weighing of mitigators and aggravators, as we have declared many times that "a jury is neither compelled nor required to recommend death where aggravating factors outweigh mitigating factors." Henyard v. State, 689 So.2d 239, 249-50 (Fla.1996); see also Gregg v. Georgia, 428 U.S. 153, 203, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976) (holding that a jury can dispense mercy, even where the death penalty is deserved); Alvord v. State, 322 So.2d 533, 540 (Fla.1975). Additionally, Florida statutory law details the role of a penalty phase jury, which directs the jury panel to determine the proper sentence without precise direction regarding the weighing of aggravating and mitigating factors in the process:
After hearing all the evidence, the jury shall deliberate and render an advisory sentence to the court, based upon the following matters:
(a) Whether sufficient aggravating circumstances exist ...
(b) Whether sufficient mitigating circumstances exist which outweigh the aggravating circumstances found to exist; and
(c) Based on these considerations, whether the defendant should be sentenced to life imprisonment or death.
§ 921.141(2), Fla. Stat. (2001). The defense in this case did not, however, object to the State's mischaracterization of the law at any time.
Despite the lucidity of the law here, and the unavoidable conclusion that the prosecution's comments during Cox's trial were error, we hold that no fundamental error occurred in the instant case. Fundamental error "reaches down into the validity of the trial itself to the extent that a verdict of guilty could not have been obtained without the assistance of the alleged error." Kilgore v. State, 688 So.2d 895, 898 (Fla.1996) (quoting State v. Delva, 575 So.2d 643, 644-45 (Fla.1991)). During voir dire, the prosecutor made the following additional statement:
Well, maybe I'm being a little too simplistic here. What the law says is that you need to weigh the evidence against and weigh it in the other direction, and depending upon which way it balances out, that is supposed to decide your recommendation. You're supposed to make your recommendation based on the weight. It's not worded that way, but that's a short rendition.
Also, the trial court did not repeat the prosecutor's misstatements of the law during its instruction of the juryindeed, the *718 trial court's instructions properly informed the jury of its role under Florida law. Thus, the prosecutorial misrepresentation of the law was harmless error, and certainly does not constitute fundamental error. See Henyard, 689 So.2d at 250 (holding that three of precisely the same prosecutorial misstatements of the law, when accompanied by correct jury instruction on the matter, were harmless error).

The State's Closing Argument
The appellant also asserts that the State presented improper argument on two occasions during its final penalty phase summation. First, Cox identifies the following statement as improper: "I stand before you again today on behalf of the decent law-abiding people of this community and this state, whom I represent." Referring this Court to King v. State, 623 So.2d 486 (Fla.1993), Cox argues that this statement was "intended to and [did] inject elements of emotion and fear into the jury's deliberations," and as such, was "far outside the scope of proper argument." Id. at 488 (quoting Garron v. State, 528 So.2d 353, 359 (Fla.1988)).
The appellant asserts that this statement fits into the category of a wrongful "message to the community" argument. See Campbell v. State, 679 So.2d 720, 724-25 (Fla.1996); Bertolotti v. State, 476 So.2d 130, 133 (Fla.1985). In Campbell, the prosecutor stated: "The death penalty is a message sent to a number of members of our society who choose not to follow the law." 679 So.2d at 724. In Bertolotti, the statement was: "Anything less in this case would only confirm what we see running around on the bumper stickers of these cars, and that is that only the victim gets the death penalty." 476 So.2d at 133 n. 3. In holding that this type of argument is impermissible, this Court deemed it an "obvious appeal to the emotions and fears of the jurors." Id. at 133. The statement made by the prosecutor during Cox's trial proceeding, however, is not this type of intolerable argument. Here, the State Attorney only stated whom he represented albeit in a somewhat grandiose manner. He certainly did not make any "message to the community" argument.
Finally, the appellant argues that when the prosecutor addressed Cox's traumatic childhood by asking that the jury "put that in its proper context, it happened more than twenty-five years before the defendant decided to kill Thomas Baker," he "improperly denigrated valid mitigating evidence." In Brooks v. State, 762 So.2d 879 (Fla.2000), this Court held:
[T]he prosecutor's characterization of the mitigating circumstances as "flimsy," "phantom," and repeatedly characterizing such circumstances as "excuses," was clearly an improper denigration of the case offered by Brooks and Brown in mitigation.
Id. at 904. Certainly, evidence of Cox's traumatic childhood is valid mitigation, see Nibert v. State, 574 So.2d 1059, 1062 (Fla. 1990); however, the prosecutor here did not denigrate or otherwise disparage this mitigation with the statement cited by the appellant. This comment was designed to convey the concept that while the mitigator may be valid, perhaps its weight should be somewhat discounted because of the passage of time and the lack of an evidentiary nexus to the defendant. This is a valid argument. See Trease v. State, 768 So.2d 1050, 1055 (Fla.2000) (holding that "there are circumstances where a mitigating circumstance may be found to be supported by the record, but given no weight").
As the prosecutorial comments noted by the appellant do not, either individually or cumulatively, amount to fundamental error, *719 we decline to disturb the holding of the court below.

VI. Heinous, Atrocious, or Cruel Aggravating Factor
The appellant contends that the murder of Thomas Baker was a simple "single stab wound murder." Accordingly, he argues that the evidence introduced at Cox's trial does not support the finding of the heinous, atrocious, or cruel aggravating factor. Since the appellant did not intend to cause his victim excessive pain or mental anguish, did not torture Baker prior to his death, and merely stabbed him in the back during an attack, Cox urges this Court to hold that there is insufficient evidence supporting the trial court's finding of this aggravator.
The function of this Court when it is reviewing aggravating factors on appeal is well settled:
It is not this Court's function to reweigh the evidence to determine whether the State proved each aggravating circumstance beyond a reasonable doubtthat is the trial court's job. Rather, our task on appeal is to review the record to determine whether the trial court applied the right rule of law for each aggravating circumstance and, if so, whether competent substantial evidence supports its finding.
Alston v. State, 723 So.2d 148, 160 (Fla. 1998) (quoting Willacy v. State, 696 So.2d 693, 695 (Fla.1997)). Thus, the analysis of this claim must begin with the trial court's sentencing order. In its order, the trial court specifically found that
[t]he victim, who according to the witnesses was obviously scared, was kicking and trying to get away, and he repeatedly pleaded that he had not taken Cox's money or broken into the locker. Unfortunately, the victim's plaintive appeal fell on deaf ears and the homicidal attack continued for several minutes, during which Mr. Baker curled up in the fetal position.
Additionally, the trial court found that immediately prior to his death, the victim was
in great distress, scared, and hysterical.... He was conscious throughout this ordeal for at least fifteen minutes, during which time he constantly experienced difficulty breathing and expressed great fear and apprehension.
Finally, the court discussed the law it was applying in the following portion of its order:
Numerous stab wounds will support this aggravator, see Pittman v. State, 646 So.2d 167 (Fla.1994), as will circumstances where the victim drowned in his own blood and has a substantial period of time to consider his demise ... just like Mr. Baker. See Cummings[-El] v. State, 684 So.2d 729 (Fla.1996); Cole v. State, 701 So.2d 845 (Fla.1997); Lusk v. State, 446 So.2d 1038 (Fla.1984).
The State has proven this aggravating circumstance beyond and to the exclusion of every reasonable doubt and it is entitled to great weight.
This Court must now evaluate the trial court's sentencing order and the record on appeal to make certain that the correct law was applied below, and that evidence sufficient to support application of the heinous, atrocious, or cruel aggravating factor is present in the record. See Alston, 723 So.2d at 160.
The trial court was certainly not mistaken in finding that the victim's lungs filling up with blood due to the attack and his concomitant awareness of his impending death supported application of HAC in the instant case. Indeed, this Court's decision in Cummings-El v. State, 684 So.2d 729 (Fla.1996), is particularly *720 instructive. In holding that the HAC aggravator was properly applied, we stated:
Good [the victim] sustained numerous stab wounds ... and the medical examiner testified that her death was caused by her lungs filling up with bloodshe drowned in her own blood. Eyewitnesses said Good was conscious for several minutes after the stabbing and asked what was taking the paramedics so long. Good had a substantial period of time in which to contemplate her impending doom.
Id. at 731. In another evaluation of the propriety of the HAC aggravator, this Court reviewed the following sentencing order and found that the aggravating circumstance had been properly applied:
[A]fter being stabbed ... Ms. Minas must have been aware of what was happening to her, and must have known she was going to die. The killing was not done quickly or painlessly. She lingered for at least ten minutes while she bled to death. She suffered pain and fear, all the while feeling helpless and alone ....
Jimenez v. State, 703 So.2d 437, 441 (Fla. 1997). Obviously, a victim's suffering and awareness of his or her impending death certainly supports the finding of the heinous, atrocious, or cruel aggravating circumstance where there is a merciless attack and beating as occurred here.
The appellant's primary contention here is that "[i]t is well-settled that the aggravator does not apply unless it is clear that the defendant intended to cause unnecessary and prolonged suffering." This declaration, however, is incorrect. Indeed, in Guzman v. State, 721 So.2d 1155 (Fla.1998), this Court held:
The intention of the killer to inflict pain on the victim is not a necessary element of the [HAC] aggravator. As previously noted, the HAC aggravator may be applied to torturous murders where the killer was utterly indifferent to the suffering of another.
Id. at 1160; see also Bowles v. State, 804 So.2d 1173, 1177 (Fla.2001) (citing Guzman for the proposition that "there is no necessary intent element to [the] HAC aggravating circumstance"); Hitchcock v. State, 755 So.2d 638, 644 (Fla.2000) (same). The appellant's contention that the trial court did not apply the correct rule of law here is without merit. Here we are faced with a torturous murder and a total indifference to the human suffering of the victim.
Likewise, we conclude that the trial court had competent, substantial evidence before it that supports its finding the heinous, atrocious, or cruel aggravator. Dr. Pillow, a forensic pathologist, testified that a person with the victim's wounds would be in acute pain, and that he would feel his "lungs fill up with blood or [feel] air hunger or [have] a problem breathing," while he was still conscious. Brack Johnson, Susan Parker, and Joseph McBrayer, the corrections officers who attended to Baker following the attack, testified that he was "struggling and obviously in great pain," knew that his lungs were filling up with blood, and "was very scared, hysterical." An inmate witness testified that Baker said, "Ms. Parker, please don't let me die." Finally, the numerous inmate witnesses to the killing all testified that Cox was absolutely merciless in his beating and stabbing of the victim.[13] We conclude that the court below applied the correct law, and had substantial evidence before it supporting the heinous, atrocious, or cruel aggravating factor. The aggravator was properly applied here.

*721 VII. Cold, Calculated, and Premeditated Aggravator
The appellant argues that the cold, calculated, and premeditated aggravator does not apply here because Cox committed murder while in the throes of an anger-filled period of his life. As he killed the victim in a fit of rage in front of 200 inmates, he contends that this murder was anything but cold, calculated, and premeditated. Also, Appellant asserts that he had a pretense of legal or moral justification, because he was reacting to the burglary of his cell and footlocker.
As an initial matter, it is clear from the record that the trial court applied the correct rule of law. In its sentencing order, the court stated:
In Jackson v. State, 648 So.2d 85 (Fla. 1994), the Florida Supreme Court found the standard jury instruction on the cold, calculated, and premeditated aggravator (CCP) unconstitutional and reiterated that this aggravating circumstance required proof of the following elements: (1) the killing was the product of cool and calm reflection and not an act prompted by emotional frenzy, panic, or a fit of rage; (2) that the defendant had a careful plan or prearranged design; (3) that the defendant exhibited heightened premeditation; and (4) the defendant had no pretense of moral or legal justification.
As we continue to enunciate the same requirements for CCP, see, e.g., Rodriguez v. State, 753 So.2d 29, 46 (Fla.2000), the trial court undoubtedly applied the correct rule of law here.
It is just as clear that the appellant's claim regarding an absence of evidentiary support for the trial court's finding of the CCP aggravator is without merit. At trial, the State presented numerous witnesses to show that Cox carefully engaged in a course of action that would allow him to catch and punish the person or people who had burglarized his personal footlocker. First, witnesses testified that upon discovering that he had been victimized, Cox announced that he would give fifty dollars to anyone willing to tell him who the thief was. During the announcement, Cox also stated that when he found the thief, he would "stab," "stick," or "kill" him. Following his announcement to the dorm, Cox procured a shank, confronted the victim, and stabbed him to death. Afterwards, the appellant stated, "I've got one more of you ... to get," proceeded to his cell, and attacked his cellmate, Lawrence Woods, saying, "[Y]ou're lucky I put it up, or I'd get [you] too." It is clear that the trial court received sufficient evidence to conclude that the instant murder was cold, calculated, and premeditated. See Alston, 723 So.2d at 160.
The appellant claims that the trial court erred in finding that "[n]othing about his asserted `pretense' [of a moral justification for the murder] rebuts the otherwise cold and calculating nature of this homicide." Cox argues that because he had been the victim of a burglary, and wanted revenge, he "certainly had a pretense of moral or legal justification." In support of this argument, the appellant points to this Court's opinions in Christian v. State, 550 So.2d 450 (Fla.1989), and Banda v. State, 536 So.2d 221 (Fla.1988). These two cases, however, are easily distinguished. In both, this Court held that the defendant had a pretense of legal or moral justification because he had been seriously threatened by the victim and felt that he had to go on the offensive in order to safeguard his own health. See Christian, 550 So.2d at 452 ("[T]he record is replete with unrebutted evidence of the victim's threats of violence to Christian and his apparent inclination to fulfill them."); Banda, 536 So.2d at 225 ("[T]he victim was a violent *722 man and had made threats against appellant."). Since there is no evidence in the instant case that the appellant was threatened by his victim, and he outweighed Baker by approximately one hundred pounds, these cases are distinguishable.
This case is factually similar to the circumstances addressed in Williamson v. State, 511 So.2d 289 (Fla.1987). There, this Court held that since there was "no evidence of any threatening acts by Drew [the victim] prior to the murder," the defendant's claim of a pretense of legal or moral justification failed. Id. at 293.[14] For precisely the same reason, the appellant's claim must fail. The record contains no threat to Cox, real or perceived, from the victim. Thus, we affirm both the trial court's instructions to the jury on, and its finding of, the CCP aggravating circumstance.

VIII. Mitigating Circumstances
At the outset, it is important to note Kearse v. State, 770 So.2d 1119 (Fla. 2000), wherein this Court held:
Deciding the weight to be given a mitigating circumstance is within the trial court's discretion, and its decision is subject to the abuse-of-discretion standard.... [T]he trial judge is in the best position to judge ... and this Court will not second-guess the judge's decision
. . . .
Id. at 1133. Additionally, "there are circumstances where a mitigating circumstance may be found to be supported by the record, but given no weight." Trease v. State, 768 So.2d 1050, 1055 (Fla.2000).
The appellant argues that the trial court improperly assigned certain mitigating circumstances either slight or no weight, based upon a misapplication of the law. First, the appellant argues that the trial court did not assign sufficient weight to the mitigating nature of his childhood. The trial court assigned, at the most, slight weight, because:
Mr. Cox only lived in his parents' home until he was approximately ten years old and his father was not present during some of this time. At age ten or eleven, Mr. Cox went to live with his grandmother, who was a very loving, comforting, and supporting influence in Mr. Cox's life. Hazel Cox, Mr. Cox's grandmother, provided Mr. Cox with a good life. She took him to church and taught him right from wrong. Furthermore, although Mr. Cox did witness some of the domestic violence that occurred between his parents, so did his siblings and they have not committed crimes over a 20-year span of time.
Cox asserts that this holding is similar to the result condemned by this Court in Nibert v. State, 574 So.2d 1059 (Fla.1990). There, the trial court "dismissed" evidence of physical and psychological abuse during the defendant's youth, giving it no weight. See id. at 1062. This Court deemed this unacceptable, stating:
The fact that a defendant had suffered through more than a decade of psychological and physical abuse during the defendant's formative childhood and adolescent years is in no way diminished by the fact that the abuse has finally come to an end.... Nibert reasonably proved this nonstatutory mitigating circumstance, *723 and there is no competent, substantial evidence to support the trial court's refusal to consider it.
Id. The difference between the instant case and Nibert, however, is that the trial court here acted well within the bounds of its discretion in considering the proffered mitigators and assigning slight weight to certain of them. As "mere disagreement with the force to be given [mitigating evidence] is an insufficient basis for challenging a sentence," Porter v. State, 429 So.2d 293, 296 (Fla.1983) (quoting Quince v. State, 414 So.2d 185, 187 (Fla.1982)), this portion of the appellant's claim must fail.
The appellant also argues that the trial court wrongfully required a "nexus" between mitigating circumstances and the murder, before they would be assigned any weight. Clearly, Florida law does not require that a proffered mitigating circumstance have any specific nexus to a defendant's actions for the mitigator to be given weight. However, an examination of the record and sentencing order reveals that the trial court did not enforce a nexus requirement; it simply attempted to place the appellant's mitigation evidence in context.[15] The trial court's holdings regarding certain of the appellant's proffered mitigators resulted from an absolute dearth of evidence contained in the record supporting the notion that the cited mitigators are relevant to the defendant in the instant case. As the record "contains competent, substantial evidence to support the trial court's rejection of these mitigating circumstances," Kight v. State, 512 So.2d 922, 933 (Fla.1987), the trial court's refusal to grant these four mitigators any weight was not improper.

IX. Proportionality and Sufficiency of the Evidence
It is well settled that this Court conducts its proportionality review in capital cases by performing "a comprehensive analysis in which it determines whether the crime falls within the category of both the most aggravated and the least mitigated of murders, thereby providing for uniformity in the application of the sentence." Rose v. State, 787 So.2d 786, 804 (Fla. 2001). We conclude that in comparison with other decisions of this Court upholding the imposition of the death penalty, the sentence given Mr. Cox is not disproportionate.
The instant murder was a carefully planned, conscienceless act that fully deserves the application of the CCP and HAC aggravating factors. This Court has made it clear that these factors are "two of the most serious aggravators set out in the statutory sentencing scheme." Larkins v. State, 739 So.2d 90, 95 (Fla.1999). Additionally, the trial court properly applied the prior conviction for violent felonies and the under a sentence of imprisonment aggravators. In mitigation, the trial court found thirty-two nonstatutory mitigating factors, nineteen of which it accorded "slight" or "little" to "some" weight.[16]
The pitiless murder perpetrated by the appellant can certainly be characterized as *724 "one of the most aggravated and least mitigated murders" before this Court. Kramer v. State, 619 So.2d 274, 278 (Fla. 1993). In the past, we have deemed the death penalty the appropriate punishment in cases where less aggravation and more mitigation existed. See Rose v. State, 787 So.2d 786 (Fla.2001) (upholding the death penalty where four aggravatorsmurder committed while on probation, prior violent felony, murder committed during a kidnapping, and HACand eleven nonstatutory mitigators properly applied); Mansfield v. State, 758 So.2d 636 (Fla.2000) (death penalty deemed proportional where HAC and crime committed during the commission of a sexual battery aggravators found, and five nonstatutory mitigating circumstances found); Way v. State, 760 So.2d 903 (Fla. 2000) (death penalty proportional where trial court found prior violent felony, murder committed during the commission of a felony, HAC, and CCP aggravators; two statutory mitigators; and seven nonstatutory mitigating circumstances); Sliney v. State, 699 So.2d 662 (Fla.1997) (finding the death penalty proportional where the murder occurred during a robbery and murder was committed to avoid arrest, two statutory mitigators existed, and a number of nonstatutory mitigators applied). Thus, the death sentence is proportional here.
While not challenged by the appellant, it is clear that the evidence introduced in the instant case was sufficient for the jury to have found beyond a reasonable doubt that Allen Cox murdered Thomas Baker. Multiple witnesses provided the facts which corroborated the State's theory that Cox became angry that he had been made the victim of a theft, tracked down a person he thought was involved in the theft, and killed him. The only contradictory evidence introduced at trial was the testimony of the appellant himself. We find that sufficient evidence exists in support of the jury's decision finding Cox guilty of first-degree murder.

X. Constitutionality of the Florida Death Penalty
The appellant asserts that the United States Supreme Court's decision in Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), requires this Court to engage in a wholesale reevaluation of the Florida death penalty scheme. He argues that Florida's death penalty scheme is unconstitutional because it does not require notice to the defendant by the State of the aggravating circumstances it plans to pursue at trial, does not require specific jury findings regarding sentencing factors, permits a non-unanimous recommendation of death, and improperly shifts the burden and standard of proof during the penalty phase.
The appellant's claim, however, was resolved by this Court in Mills v. Moore, 786 So.2d 532 (Fla.2001).[17] Therein, we held:
The majority opinion in Apprendi forecloses Mills' claim because Apprendi preserves the constitutionality of capital sentencing schemes like Florida's. Therefore, on its face, Apprendi is inapplicable to this case.
Id. at 537. Additionally, all of the individual facets of Cox's claim have previously been rejected. This Court has held that since all of the possible aggravating factors are detailed in section 921.141(5) of the *725 Florida Statutes, "there is no reason to require the State to notify defendants of the aggravating factors it intends to prove." Vining v. State, 637 So.2d 921, 927 (Fla.1994); see also Mann v. Moore, 794 So.2d 595, 599 (Fla.2001). We have also rejected the assertions that the trial jury constitutionally must make specific written findings, and its verdict recommending the death penalty must be unanimous. See Randolph v. State, 562 So.2d 331, 339 (Fla.1990); Mann, 794 So.2d at 599. Finally, this Court "has repeatedly held that there is no merit to the burden shifting claim." Freeman v. State, 761 So.2d 1055, 1067 (Fla.2000); see also Shellito v. State, 701 So.2d 837, 842-43 (Fla. 1997). Based upon the fact that all of the arguments presented by the appellant here have previously been decided adversely to his assertions, we decline to overturn the result reached below and affirm.

Conclusion
In accordance with the above analysis, we hold that the appellant has not presented any legal basis upon which we may set aside his judgment or sentence of death. We affirm the decision of the court below.
It is so ordered.
WELLS, C.J., and SHAW, HARDING, ANSTEAD, PARIENTE, and LEWIS, JJ., concur.
QUINCE, J., dissents.
NOTES
[1] Because the appellant pled guilty to the battery charge prior to his trial and raises no claims regarding the charge or related sentence, we do not discuss it further.
[2] A "shank" or "shiv" is a homemade knife.
[3] Spencer v. State, 615 So.2d 688 (Fla.1993).
[4] The trial court found the following aggravating circumstances: (1) the capital felony was committed by a person previously convicted of a felony and under sentence of imprisonment; (2) the defendant was previously convicted of a felony involving the use or threat of violence; (3) the capital felony was especially heinous, atrocious, or cruel; and (4) the capital felony was committed in a cold, calculated, and premeditated manner without any pretense of moral or legal justification.
[5] The trial court found the following mitigators: (1) severe domestic violence in Cox's childhood homeslight weight; (2) Cox's mother was very cruel and unpredictable slight weight; (3) Cox's mother was very cruel to the childrenslight weight; (4) frequently absent father who failed to protect Cox from mother's physical abuseslight weight; (5) Cox's mother was emotionally unstableslight weight; (6) Cox was forced to haul firewood as a small child until he dropped from physical exhaustionslight weight; (7) Cox's parents divorced and remarried only to divorce againsome weight; (8) Cox has no happy memories from his childhoodslight weight; (9) Cox's mother abandoned him when he was eleven years old, forcing his father to send him to his grandmother's house for her to raise some weight; (10) Cox was the frequent victim of inconsistent and unpredictable patterns of discipline as a childno separate weight; (11) Cox's mother failed to demonstrate any maternal affectionno additional weight; (12) Cox grew up feeling unwanted, unloved, and worthlessno additional weight; (13) Cox is able to form friendshipsslight weight; (14) Cox suffers from dysthymic disorder, a chronic depressive disorder unrelated to substance abuse; the disorder is amenable to treatmentslight weight; (15) Appellant has been diagnosed additionally with adjustment disorder with depression; major depressive disorder, recurrent and severe; anti-social personality; alcohol dependence; and mixed personality disorderslight weight; (16) Cox has been on antidepressant medication since 1991 no additional weight; (17) Cox suffers from severe depressionno additional weight; (18) Cox attempted suicide once in his youth and still has suicidal thoughtsslight weight; (19) Cox demonstrates brain impairment possibly from a head injury or a congenital birth defect or bothslight weight; (20) Cox's early childhood left him with feelings of hopelessness, insecurity, rejection, and inadequacyno additional weight; (21) Cox was severely injured in a motorcycle accident when he was sixteen rendering him unconsciousno additional weight; (22) Cox suffers from very rigid and repetitive thinkingno additional weight; (23) Cox is alienated and isolated and is distrustful of otherslittle weight; (24) Cox suffers from a severely impaired spectrum of emotional responsesslight weight; (25) as a result of his childhood, Cox has no sense of moral developmentno additional weight; (26) Cox's mental illness could have been treated and controlled with medication or counseling or bothno additional weight; (27) at the time of the offense, Cox's ability to exercise good judgment was impairedno additional weight; (28) Cox behaved well throughout these court proceedingssome weight; (29) Cox's moral development was similar to a retarded personno additional weight; (30) Cox is able to function and grow in prisonsome weight; (31) Cox is loved by his familyslight weight; and (32) Cox is a human beingno additional weight.
[6] The appellant asserts that (1) the trial court erred in denying the appellant's motion for a mistrial based upon a discovery violation; (2) the trial court erred in denying the appellant's motion for a mistrial following a witness's unknowing testimonial violation of the court's order in limine; (3) the trial court erred in ordering the appellant's penalty phase mental health expert to turn over her notes and testing materials to the State prior to trial; (4) the trial court erred in refusing to accept the appellant's offer to stipulate to his prior violent felony convictions; (5) the prosecutor's misstatements of the law and allegedly improper argument amounted to fundamental error; (6) the trial court erred by instructing the jury on and in finding that the murder was especially heinous, atrocious, or cruel ("HAC"); (7) the trial court erred by instructing the jury on and in finding that the murder was committed in a cold, calculated, and premeditated manner, without any pretense of legal or moral justification ("CCP"); (8) the trial court erred by failing to consider all available mitigating evidence and in giving little weight to valid mitigation; (9) the death penalty is not proportional in the instant case; and (10) Florida's death penalty scheme violates the Florida and United States constitutions.
[7] Indeed, when Faulk was deposed before trial, he replied to the question "was there any evidence to indicate that Cox knew that the knife had been found?" by saying, "Not that I know of."
[8] Richardson v. State, 246 So.2d 771 (Fla. 1971).
[9] The State maintained this strategy during the trial, but did comment on an isolated occasion in the middle of its closing argument that "somebody who is capable of orchestrating perjury, is also capable of planting a decoy knife." This sentence fragment is the only comment that could be construed as the State wavering from its central theory of the case.
[10] Williams v. State, 110 So.2d 654 (Fla. 1959).
[11] Specifically, the following exchange occurred:

Mr. Gross (State's Attorney): We're ready to make an announcement as to that last motion, your Honor, which I think would get you off the bench.
The Court: Extension of time?
Mr. Gross: Yes, sir. We don't have any objection to the extension of time under the circumstances. All we would ask is that we have a report from this doctor by a week from tomorrow, which would be the 25th, and a copy of all of her notes and all of her records.
The Court: Any problem with that?
Mr. Gross: We're hoping to depose her the follow[ing] Wednesday after that deadline, your Honor, so that only gives us a few days.
Mr. Stone (defense counsel): I don't think that's going to be any complication, if I'm not in Kentucky all week.
[12] The record reflects each witness's simply relating Cox's crimes against him or her. No emotional displays or breakdowns occurred.
[13] Two of the witnesses to the killing even testified that some of the spectators to the fight urged Cox not to stab him any more, but he continued to do so.
[14] This Court's opinions in Zakrzewski v. State, 717 So.2d 488 (Fla.1998), and Hill v. State, 688 So.2d 901 (Fla.1996), also provide examples of "pretenses" deemed insufficient. See Zakrzewski, 717 So.2d at 492 (killing one's own family to save them from having to go through a divorce does not constitute a pretense of legal or moral justification); Hill, 688 So.2d at 907 (killing people to prevent them from performing legal abortions is not a valid pretense of legal or moral justification).
[15] For example, the trial court addressed a proffered mitigating circumstance by stating:

While the evidence supports the existence of his heightened anxiety in dealing with other people, the evidence does not support any conclusions or even speculations as to how it contributed to Mr. Cox's decisions and actions that led to Thomas Baker's death.... Thus, while established by Dr. McMahon's opinion, the court declines to afford any weight to this circumstance.
[16] The trial court accorded only three of the mitigators "some" weight: (1) Cox's parents divorced and remarried only to divorce again; (2) Cox's mother abandoned him when he was eleven years old; (3) Cox behaved during the trial proceedings.
[17] We note that the United States Supreme Court has granted certiorari in State v. Ring, 200 Ariz. 267, 25 P.3d 1139 (2001), cert. granted, ___ U.S. ___, 122 S.Ct. 865, 151 L.Ed.2d 738 (2002). However, unless and until the United States Supreme Court recedes from Walton v. Arizona, 497 U.S. 639, 110 S.Ct. 3047, 111 L.Ed.2d 511 (1990), and Proffitt v. Florida, 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976), we see no need to revisit our Mills decision and will follow precedent.