698 So.2d 629 (1997)
Chester BOZEMAN, Appellant,
v.
STATE of Florida, Appellee.
No. 96-0822.
District Court of Appeal of Florida, Fourth District.
September 3, 1997.
Richard L. Jorandby, Public Defender, and Karen E. Ehrlich, Assistant Public Defender, West Palm Beach, for appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Sharon A. Wood, Assistant Attorney General, West Palm Beach, for appellee.
GROSS, Judge.
Appellant, Chester Bozeman, appeals his convictions for battery on a police officer and resisting an officer with violence. We reverse because the trial court admitted evidence that Bozeman had a propensity for violence when the defense had not opened the door to such testimony.
The charges arose out of an incident with Sergeant James Wimberly while Bozeman was an inmate at the Broward County Jail. At trial, Wimberly described his duties and referred to the unit he managed as a "special management" division. While he was in the unit talking to another prisoner, Wimberly became concerned that Bozeman was walking behind him. Wimberly explained that "it's important to keep prisoners in your visual sight lines where you can see them ... in order to minimize the opportunity for someone to attack or hurt you."
When he was told not to stand behind Wimberly, Bozeman appeared to become angry. *630 According to the officer, Bozeman came up to him and said, "I'll kick your ass in here pussy nigger." Several times Wimberly told the inmate to return to his cell, but he refused, stating "Put me there." Wimberly secured the assistance of two back-up deputies and touched Bozeman lightly on the arm saying, "Let's go to your room." Bozeman suddenly struck the deputy on the side of his head and started swinging wildly, while Wimberly tried to block the blows. The other deputies jumped in and everyone went down to the floor until the inmate was restrained.
After Wimberly described the fight, the prosecutor returned to the earlier reference to the unit as "special management" and asked Wimberly to define the term. The court sustained a defense objection to relevancy, but indicated at sidebar that, depending on the cross-examination, the issue could become relevant.
On cross-examination, the only question pertaining to this subject was the following:
Defense counsel: And you're saying that you were extra apprehensive just from the moment you walked in there?
A: Yes.
On redirect examination, over objection, Wimberly was allowed to explain that he was "extra sensitive" upon entering the special management unit because it housed the "worse behaved inmates in the Broward County jail system," men who were "maladjusted" and "violent," who were placed there because "they [had] exhibited the propensity for violent behavior towards other inmates and staff. They are there for escape risk."
During the defense case, Bozeman and another witness characterized Wimberly as the aggressor who went to get the two deputies to help him before initiating the fight. Bozeman said he was afraid and acted in self-defense. Between them, Bozeman and his witness had 10 felony convictions.
During his closing argument, the prosecutor used the description of the type of inmates housed in the special management unit to argue that Bozeman must have been the aggressor.
Ask yourself who would be the aggressor. Who would be angry about their situation? Who would be uncomfortable with where they were at that present point in time?
Ask yourself that. Ask yourself who's in that unit. Ask yourself what type of unit that is. Ask yourself how they got there. Then ask yourself who is the aggressor.... These are not guys who are afraid of the deputies.... Not in here. They have shown they're not afraid.
Wimberly's description of the special management unit was tantamount to the admission of prior bad acts to prove that Bozeman had acted consistently with that pattern of conduct in striking the officer. According to the witness, to be placed in the unit, an inmate must have been "maladjusted," "violent," and "have exhibited the propensity for violent behavior towards other inmates and staff." Such testimony is inadmissible. See Broderick v. State, 564 So.2d 622 (Fla. 4th DCA 1990); Bolden v. State, 543 So.2d 423 (Fla. 5th DCA 1989); Smart v. State, 596 So.2d 786 (Fla. 3d DCA 1992).
Additionally, Wimberly's portrayal of the unit's inmates is legally problematic because it was specific evidence of Bozeman's bad character when the defendant had not placed his character in issue. This is contrary to sections 90.404(1)(a) and 90.405(1), Florida Statutes (1995). The pejorative characterization of the unit is akin to the classification of a geographic area as "high crime" or drug infested, reputation of neighborhood testimony that impermissibly implies guilt through association. See Wheeler v. State, 690 So.2d 1369, 1371 (Fla. 4th DCA 1997).
The state argues that defense cross-examination of Wimberly opened the door to testimony about the unit. To open the door to evidence of prior bad acts, the defense must first offer misleading testimony or make a specific factual assertion which the state has the right to correct so that the jury will not be misled. See Brown v. State, 579 So.2d 898 (Fla. 4th DCA 1991); Dodson v. State, 356 So.2d 878 (Fla. 3d DCA 1978); Hernandez v. State, 569 So.2d 857 (Fla. 2d DCA 1990); Davis v. State, 216 So.2d 87 (Fla. 2d DCA 1968); Allred v. State, 642 So.2d 650 (Fla. 1st DCA 1994); Fletcher v. *631 State, 619 So.2d 333 (Fla. 1st DCA 1993). The "opening the door" concept is based on considerations of fairness and the truth-seeking function of a trial, where cross-examination reveals the whole story of a transaction only partly explained in direct examination.
For example, in McCrae v. State, 395 So.2d 1145 (Fla.1980), defense counsel through his questions on direct examination "tactfully attempted to mislead the jury into believing that [the defendant's] prior felony was inconsequential." Id. at 1151. The supreme court held that the prosecutor was entitled to elicit the nature of the prior felony conviction on cross-examination. The court held that the defendant's
line of questioning could have deluded the jury into equating appellant's conviction of assault with intent to commit murder with his previous misdemeanors. Consequently, the state was entitled to interrogate [the defendant] regarding the nature of his prior felony in order to negate the delusive innuendoes of his counsel.
Id. at 1152.
Other cases illustrate the types of defense deceptions that open the door to evidence of prior bad acts. When a defendant attempted to enhance his credibility by pointing out that he had been a law enforcement officer, this court found no error in the state's impeachment evidence that the defendant had been fired from his job as a correctional officer. Brown, 579 So.2d at 899. The defendant in Allred claimed a lack of violent propensity and asserted that he had never hit any woman; the first district held that such testimony opened the door to rebuttal evidence that the defendant had hit his first wife and a former girlfriend. Allred, 642 So.2d at 651. In Ashcraft v. State, 465 So.2d 1374 (Fla. 2d DCA 1985), the defendant opened the door to evidence about a prior rape conviction by testifying that he "had never hurt anyone." Id. at 1375. The Fletcher defendant's testimony that he had "never pointed a gun at anybody" and that he was a "responsible user of firearms" justified the state's later introduction of evidence about the defendant's reckless use of a gun at a time prior to the incident at issue. Fletcher, 619 So.2d at 334.
Similarly, when a defendant testified "that he had never done any drug deals in his life, he opened the door to questioning about a heroin deal he had arranged two days prior to the [crimes at issue]." Hernandez, 569 So.2d at 859. The direct examination of the defendant in Dodson "created a basis for an inference that there was one prior conviction for auto theft and that there were ... crimes other than theft", the third district held that such testimony opened the door to the state's proof that the "other crimes" included auto theft and theft of property. Dodson, 356 So.2d at 879.
In this case, the innocuous question posed by defense counsel to Wimberly was hardly the type of deceptive conduct by a defendant that opens the door to evidence of prior bad acts. See Gonzalez v. State, 538 So.2d 1343, 1345-46 (Fla. 4th DCA 1989); Leonard v. State, 386 So.2d 51 (Fla. 2d DCA 1980); Andrews v. State, 172 So.2d 505, 507-08 (Fla. 1st DCA 1965). The offensive testimony was not responsive to any misleading statement made by the defendant during his direct examination. The defendant did not place his reputation for nonviolence at issue. The state argues that the testimony explained Wimberly's state of mind; however, the officer's state of mind was not a material issue in the prosecution for which the state was entitled to adduce evidence. See State v. Baird, 572 So.2d 904, 907 (Fla.1990). In any event, the danger of unfair prejudice far outweighed any probative value of the testimony. § 90.403, Fla. Stat. (1995). The evidence was cumulative since a jury is aware that jails are dangerous places where an officer would be expected to be on his guard, whether in a special management area or not.
Evidence that suggests a defendant has committed other crimes or bad acts can have a powerful effect on the results at trial. See Czubak v. State, 570 So.2d 925 (Fla.1990). This case turned on the credibility of the witnesses. Although Bozeman and his witness may not have been long on credibility, in light of the prosecutor's use of the improper comments during his closing argument, we cannot say that the error was harmless under *632 State v. DiGuilio, 491 So.2d 1129 (Fla. 1986).
For the reasons stated, we reverse the convictions and remand for a new trial.
GLICKSTEIN and PARIENTE, JJ., concur.