W. SHARP, J.
Modeste appeals from a final judgment and sentence after a jury found him guilty of possession of more than twenty grams of cannabis,[1] and possession of drug para *1080 phernalia.[2] Modeste argues on appeal that the trial court erred in allowing the state to present evidence of his prior arrests, as rebuttal, in order to impeach his credibility in a situation where his testimony on direct did not mislead the jury in a material way. Modeste argues the other evidence in the case against him was weak and his credibility versus the police officer who testified for the state, was crucial; thus he was prejudiced and should receive a new trial. We agree.
The testimony at trial revealed that at 10:30 p.m. on November 30, 1998, two police officers, Carbonell and Miller, responded to a call in the area of an apartment house in Orlando, Florida. Carbo-nell approached the building from the front and Miller approached it from the back. Carbonell testified he saw Mod-este leaning against a car in the parking area about thirty feet away. It was dark, and he could not see Modeste’s face.
Modeste began walking in his direction, accompanied by two women. He appeared to have “something” in his hand resembling a brown paper bag. When Modeste got close to Carbonell, Modeste turned and walked back to the car. After he turned around, Carbonell could not see the bag. Modeste went around to the far side of the car and Carbonell saw him make a “leaning movement,” as if to hide something. Carbonell could not see his hands.
Modeste, accompanied by the two women walked towards Carbonell, but Modeste was no longer carrying a bag. Carbonell stopped all three and asked them if they had drugs. He detained them while he ran their names by the police department’s computer. Modeste cooperated and allowed Carbonell to search him, but Carbo-nell did not search the women to see if they had a bag. One was permitted to •leave to go to her apartment in the complex to obtain her identification.
When Officer Miller arrived, he watched the three detainees. Then Carbonell searched the area around the car where he had initially seen Modeste, and where he testified Modeste had gone, upon seeing him. Carbonell testified he found a paper bag stuffed on top of a tire in the wheel well of the car. It contained twenty-one plastic baggies, each with small amounts of marijuana. The bag and baggies were unsuccessfully tested for fingerprints.
At the trial, Modeste and one of the two women, Raven, denied Modeste had returned to the car and that he or any of them had been carrying a bag. Modeste said he had been visiting Raven, who lived in the complex. They had gone to the store for snacks and drinks, and were on their way back to the apartment when they passed the parked car where Carbo-nell found the paper bag.
Modeste testified that when Carbonell stopped them and took their names he had them sit on the sidewalk, and he advised Modeste he was going to charge him. Modeste asked for what, explaining they were not trespassing since one of the women lived in the complex. He further testified both Officer Miller and Officer Carbonell went to the car and searched it. Carbonell told him he was being arrested for possession of cannabis, referencing the paper bag. Modeste said he denied that the bag or car belonged to him.
As part of this testimony, Modeste said:
[H]e [Carbonell] basically told me we’re placing you under arrest, I asked him what I was being arrested for and he said possession of cannabis and I said possession of what, and he said cannabis again, and I wasn’t aware of the term, it meant marijuana, and I was like, and he said it was marijuana, and I said I’m sorry, I don’t understand where you’re coming from, and he was like, well, you were by that car weren’t you, and I was like everyone else was by *1081 the car, I don’t understand the relevance why you’re charging me, and he was like its not your car, not your — he still took me downtown. (Emphasis supplied)
He asked me about the car. I told him it wasn’t mine. He asked me about the bag, I said what bag. Beer bag, chip bag, what bag you talking about. So I had no idea.
At the conclusion of Modeste’s direct testimony, the prosecutor approached the bench and claimed Modeste had “opened the door” to evidence about his two prior arrests for possession of cannabis because he had stated he had no idea what the term “cannabis” meant, and the arrests would show that statement to be untrue. The trial court ruled that Modeste had testified he did not know what cannabis was, and thus he would permit the state to cross-examine Modeste about his two prior arrests involving cannabis, because Mod-este had attempted to mislead the jury.[3]
On cross-examination, the state asked Modeste:
Q. You told this jury you are not aware of the term cannabis?
A. I did not say that.
Q. You didn’t tell this jury the officer told you that you were under arrest for cannabis?
A. When he first said cannabis, it, you know—
Q. You weren’t sure what that meant?
A. Not offhand. I had heard the term, but unless you mention like saying Negro, I’ve never been Hispanic, but I know it means black, one correlates to the next.
The state then proceeded to impeach Modeste by asking him if he remembered he had been arrested in December of 1995 for possession of cannabis, and having been placed on probation for possession of more than twenty grams of cannabis in July of 1998. In closing argument, the state concluded by attacking Modeste’s credibility with the following:
Let’s do talk about credibility. You saw the defendant up there putting up— putting on a show, very contrived testimony using the words that vehicle, things of that nature, very contrived, putting on an act as if he’s innocent.
They told me I was under arrest for cannabis. I didn’t know what that meant, cannabis, I had no idea. Not truly honest with you. He knows what cannabis is. He knows exactly what that is because he’s been arrested twice for the same thing. He’s not being honest with you, he’s trying to hide the truth from you....
Is it possible somebody left a bag of 21 dime baggies there and took off? When you look at the facts of this case, well, its possible, but it’s not reasonable. That bag, was found in the exact location that the defendant was trying to conceal it. It would be nice if we had more but unfortunately the defendant did a great job of trying to conceal it. He did a beautiful job of trying to fool you today with his testimony, he went a little too far and we caught him. (emphasis added)
After the jury began deliberating, it returned with a question relating to the impeachment evidence: “May we see a transcript of the testimony around previous knowledge of the term cannabis by defendant.” The transcript was read back to the jury. It subsequently found Modeste guilty on the two counts described above.
The question on appeal is whether Mod-este made a sufficiently false or misleading statement which justified permitting the state to impeach him with details of his prior arrests.
Circumstances under which a jury may learn of a defendant’s prior bad *1082 acts are extremely limited due to the severely prejudicial effect. See Williams v. State, 110 So.2d 654 (Fla.1959), § 90.404(2)(a). This court has held that the erroneous admission of collateral crimes is presumptively harmful because of the danger that the jury will take the defendant’s bad character or propensity to commit crime as evidence of guilt. Jackson v. State, 627 So.2d 70, 71 (Fla. 5 th DCA 1993). See also Peek v. State, 488 So.2d 52 (Fla.1986); Straight v. State, 397 So.2d 903 (Fla.1981). Where the evidence has no relevancy except as to the character and propensity of the defendant to commit the crime charged, it must be excluded. McCrae v. State, 395 So.2d 1145 (Fla.1980).
Collateral crimes evidence is presumptively harmful. Czubak v. State, 570 So.2d 925, 928 (Fla.1990); Suarez-Mesa v. State, 722 So.2d 843 (Fla. 2d DCA 1998). And the harmless error doctrine requires the state to show, beyond a reasonable doubt, that the error did not contribute to the verdict. Suarez-Mesa, citing State v. DiGuilio, 491 So.2d 1129 (Fla.1986). The burden of proof on appeal was also set forth in Williams v. State, 692 So.2d 1014 (Fla. 4 th DCA 1997) where evidence was admitted that the defendant had been recently released from jail and the prosecutor commented that he had gotten into trouble. The court held that a reviewing court may affirm a conviction only if the state proves beyond a reasonable doubt that the verdict could not have been affected by the error, and a showing that the evidence against the defendant was overwhelming is not sufficient.
In order to properly open the door to such damaging impeachment evidence, the defendant or defense must offer misleading testimony or make a specific factual assertion which the state has the right to correct, so that the jury will not be misled. Brown v. State, 579 So.2d 898 (Fla. 4th DCA 1991); Bozeman v. State, 698 So.2d 629 (Fla. 4th DCA 1997). We do not think Modeste’s testimony rises to that level. At best he said that at the immediate time of his arrest he did not recognize the term cannabis meaning the same thing as marijuana. He did not say he did not know what marijuana was, that he had never possessed drugs, or that he had never been arrested. He was describing essentially the circumstances and his immediate impressions upon being arrested. In sum, his statement did not imply he had no prior contacts with the police or drugs. Further, Modeste explained what he meant on cross-examination. As such, the questions concerning the arrests and related matters were collateral and their sole prejudicial effect was to show bad character. Pate v. State, 529 So.2d 328 (Fla. 2d DCA 1988), citing, Fulton v. State, 335 So.2d 280 (Fla.1976); Finlay v. State, 424 So.2d 967 (Fla. 3d DCA 1983); Gelabert v. State, 407 So.2d 1007 (Fla. 5th DCA 1981).
The State also argues in this case that Modeste did not meet his burden of showing the court’s ruling was so prejudicial it could reasonably be thought the impeachment evidence contributed to the verdict. § 924.051(7), Fla. Stat.; Jackson v. State, 707 So.2d 412, 414-415 (Fla. 5 th DCA 1998). But evidence of collateral crimes is presumptively harmful. Czubak; Suarez-Mesa; Jackson. A conviction may be affirmed in such a case only if the State shows beyond a reasonable doubt the verdict could not have been affected by the error. Williams.
In this case, there was not an overwhelming case against Modeste. The only direct evidence came from Officer Carbo-nell’s testimony that Modeste had returned to the car and had been trying to hide something; presumably, the paper bag he had been carrying. It was very dark and Carbonell agreed he could not see Modeste’s hands.[4] However, Modeste and Raven denied he went back to the car *1083 or that he had been carrying a paper bag. There was no other evidence to link Mod-este to the paper bag containing the cannabis. Credibility of the witnesses drove the case.
Even if Modeste’s testimony on direct gave the impression he had not been involved with law enforcement before, he was entitled to that impression. A jury is to consider only the evidence presented against a defendant in any given case — not evidence of prior bad acts. The only plausible purpose of the jury’s knowing that Modeste knew the definition of the term cannabis over marijuana was that it could draw the inference he had been involved with law enforcement before — a fact the jury should not have been allowed to consider. The fact that these facts were reemphasized in the state’s closing argument and that the jury asked questions about these matters, illustrates how prejudicial this impeachment evidence was in this trial.
REVERSED.
THOMPSON, C.J., concurs
GRIFFIN, J., dissents with opinion.

. § 893.13(6)(a), Fla. Stat. (1997).

. § 893.247(1), Fla. Stat. (1997).

. The prosecutor's statement inferred, as Modeste notes, that he had been adjudicated. In fact, one of the charges had been nolle processed. Modeste had pled no contest to the other charges and was placed on probation; he had not been adjudicated.

. But Carbonell’s testimony itself contained discrepancies. For example, while his report indicated the bag was in Modeste’s right hand, his in court testimony was that Modeste carried it in his left hand.