PER CURIAM.
Dennis and Cinda Gonzalez appeal an adverse jury verdict on their claim of false arrest against the City of Tampa. First, Mr. and Mrs. Gonzalez assert that the trial court erred in denying their motion for directed verdict on the issue of probable cause to search their rental residence. We conclude that this issue is without merit and affirm the trial court’s determination. Mr. and Mrs. Gonzalez also assert that the trial court erred in permitting the City to cross-examine several witnesses as to the criminal arrest history of Mr. Gonzalez. We find that segments of the cross-examination were improper and prejudicial, but their effect was limited to the issue of damages allegedly sustained by the Gonza-lezes.
On the evening of June 15, 1993, Mr. and Mrs. Gonzalez were arrested for the crime of misdemeanor child neglect. The couple was in the process of relocating to a new residence when they left their home to look for a friend who had promised assistance. While they were absent, City of Tampa police officers arrived at the residence and found their four minor children left in the custody of their daughter, Michelle, who was then thirteen years old. When Mr. and Mrs. Gonzalez were located outside a neighborhood bar by the police officers, each was arrested and charged with child neglect. After thirty-eight hours of incarceration, Mrs. Gonzalez was able to post bond for her pretrial release; Mr. Gonzalez was able to obtain his pretrial release forty-eight days after his arrest. After both Mr. and Mrs. Gonzalez were acquitted of the charges of misdemeanor child neglect, they commenced this civil action.
As their first point on appeal the Gonzalezes raised the issue of the legality *292 of the search of their home. Their thirteen-year-old daughter allowed the officers to enter the residence, where officers found conditions that led them to believe that the Gonzalez children were being neglected. As their only ground that there was no probable cause for the arrest of Mr. and Mrs. Gonzalez for child neglect, the plaintiffs contended that Michelle could not legally consent to entry by the officers. We find no error in the trial court’s determination that Michelle’s consent was valid or the jury’s finding that probable cause for arrest was present.
Because the police had probable cause to arrest Mr. and Mrs. Gonzalez, the City established its defense to this action; thus, the issues concerning cross-examination have relevance only to the extent that they might have otherwise clouded the jury’s decision on probable cause. Mr. and Mrs. Gonzalez and their children sought to recover not only their out-of-pocket expenses but also damages for “great shame, indignity, mortification, humiliation, public ridicule, loss of liberty, loss of personal reputation, loss of filial consortium with other family members, pain and suffering, and mental anguish.” It is thus apparent that Mr. and Mrs. Gonzalez claimed wide-ranging effects from this false arrest. For example, in this instance consortium encompasses more than mere sexual relations. It includes affection, fellowship, society, and the assistance necessary for a successful marriage. See City of St. Petersburg v. Hackman, 672 So.2d 42, 45 (Fla. 2d DCA 1996). The broad nature of these claims created a concomitantly expansive sphere of admissible probative evidence; a more narrowly drawn damage claim would have correspondingly diminished this expanse. Cross-examination is appropriate when germane to matters elicited on direct examination. See Steinhorst v. State, 412 So.2d 332, 337 (Fla.1982). Nevertheless, the trial court should have circumscribed the City’s cross-examination of the plaintiffs.
Over objection, the City’s attorney cross-examined Michelle regarding her father’s arrest record. The inquiry was not limited to eliciting the number of his arrests but included questions about a recent arrest for which Mr. Gonzalez remained in custody awaiting trial. The fact that Mr. Gonzalez was in jail awaiting trial on non-related charges was irrelevant. Similarly, during Mrs. Gonzalez’s testimony, the City forced her, over objection, to identify not only the number of occasions on which her husband had been arrested but also the nature of his alleged crimes. The City conducted a comparable cross-examination of Mr. Gonzalez, again over objection. The plaintiffs’ testimony established that Mr. Gonzalez had not been convicted of all the crimes for which he had been arrested.
The City contended that the frequency and the length of Mr. Gonzalez’s absences from his family were relevant to his damage claims. Although this information might have been probative, we conclude that identification of the specific offenses for which he had been arrested was, in this unique instance, not relevant.
The tension between the probative value and prejudice inherent in evidence of collateral crimes was deftly illustrated by the Fourth District in Trees v. K-Mart Corp., 467 So.2d 401 (Fla. 4th DCA 1985). In Trees both the trial judge and the appellate court struggled with the relevance/prejudice balancing test because K-Mart attempted to introduce evidence that the plaintiff in that false arrest and malicious prosecution action had been arrested two years previously for a similar offense. At trial K-Mart sought to introduce evidence that Ms. Trees, as a fifteen-year-old, had been arrested for shoplifting a pair of pants from a J. Byrons store. On that occasion, as in the case before the court, she had been apprehended by security personnel and turned over to the police, yet she apparently claimed no ill effects from the first incident. K-Mart thus offered the evidence in mitigation of damages on the theory that the plaintiffs own *293 “admission that she had not suffered from any emotional problems as a result of the first arrest, tended to disprove the present damage claim.” Trees, 467 So.2d at 402. The trial court found that the two incidents were sufficiently similar to render evidence of the first incident logically relevant under section 90.401, Florida Statutes (1985), in that it tended to “prove or disprove a material fact,” i.e., the pending damage claim. The judge also cautioned the jury on two separate occasions that the evidence wTas being presented only for a limited purpose.
The trial judge in Trees had a more difficult struggle deciding whether the proffered evidence was legally relevant, however, which involves a consideration of the effect of unfair prejudice on the probative value of the evidence, as expressed in section 90.403 of the Florida Evidence Code. Although first deciding to exclude the evidence, the judge ultimately decided to allow it. The Fourth District commended the trial judge for his “sensitive analysis of the need for the evidence as proof’ and held that the judge had not abused his discretion in admitting the evidence. Id. at 403.
As the Trees case demonstrates, the decision on whether to allow testimony or evidence as to a plaintiffs prior crimes in a false arrest case involves a complex balancing process. In Trees the court admitted testimony of only one previous prior crime and did so because it was extremely similar to the circumstances involved in the pending false arrest matter. In this case, however, there was no allegation that the prior arrests or convictions were for child neglect. In fact, the charges actually identified by Mr. or Mrs. Gonzalez in cross-examination in-eluded disorderly conduct, prowling, “scuffling” with a Tampa police officer, driving with a suspended license, failure to appear, and violation of probation.
Normally, inquiry into the number of times that a person has been arrested, even without conviction, is deemed so prejudicial as to require reversal. See Fulton v. State, 335 So.2d 280 (Fla.1976); Dixon v. State, 426 So.2d 1258 (Fla. 2d DCA 1983). In limited circumstances, however, evidence of prior arrests is admissible if it is legally relevant and if its probative value is not substantially outweighed by the danger of unfair prejudice. See §§ 90.402, .403, Fla. Stat. (1997). We emphasize again that Mr. and Mrs. Gonzalez claimed a wide range of harms, including injured reputation, humiliation, disgrace, and public ridicule, the effects of which are not easily quantified. Under the defense theory, Mr. Gonzalez had such an extensive history of arrest that the emotional anguish and other intangible effects he and his family suffered as a result of this alleged false arrest were nominal at best. By claiming these various intangible damages, Mr. and Mrs. Gonzalez put into issue the number of his arrests, their reactions to those arrests, and the effect of his separation from his family when arrested. The trial judge appropriately cautioned the jury to consider this evidence only as to the extent of damages the Gonzalezes had suffered as a result of these events. We emphasize that the evidence was admissible only in this extremely restricted situation as a means for the defendant to challenge whether the plaintiffs’ damages were in fact caused by this incident and, if caused, to demonstrate the level of damages actually sustained for their claims of emotional suffering and loss of consortium.[1]
*294 Although we find that the trial judge allowed the City to shove some inappropriate and prejudicial evidence through the wide-open door created by the Gonzalezes, we cannot say that the decision constituted an abuse of discretion or that it affected the jury’s determination that the City of Tampa police had probable cause to arrest Mr. and Mrs.. Gonzalez for child neglect. Accordingly, we affirm.
PARKER, A.C.J., and CASANUEVA and DAVIS, JJ„ Concur.

. Courts in other jurisdictions have addressed this issue. See Mitchell v. Windham, 469 So.2d 381, 386 (La.Ct.App.1985) (finding appropriate an award of nominal damages for the plaintiffs ten-day illegal detention because, among other things, he was unemployed and “was not unaccustomed to jails, having been incarcerated several earlier times for other offenses”); Allen v. Vogue Amusement Co., 377 S.W.2d 805 (Ky.Ct.App.1964) (holding that defendants were permitted to inquire of parents of boy suing for false imprisonment whether the boy had been detained overnight subsequent to the incident, *294 because the testimony had bearing on the alleged emotional effects the boy claimed he suffered from the false imprisonment); Smith v. Executive Club, Ltd., 458 A.2d 32, 40 (D.C. 1983) ("In an action for false imprisonment, we recognize that matters not otherwise admissible may be competent in mitigation of damages, such as evidence of previous arrests and time spent in jail, where the plaintiff claimed in his suit that he was humiliated and upset by the alleged false arrest.”); Butcher v. Adams, 220 S.W.2d 398 (Ky.1949) (holding that, when the plaintiff claimed humiliation and distress in a false imprisonment action, evidence that he had been arrested more than once within a year prior to the incident and had spent time in jail was admissible for the purpose of affecting the measure of damages).