ERVIN, J.,
dissenting.
Appellant, Candy Ann Turben, appeals her convictions for the offenses of (1) possession of a controlled substance, ie., methamphetamine, (2) felony driving while her license had been suspended/revoked (DWLSR), (3) possession of less than 20 grams of cannabis, and (4) possession of drug paraphernalia. She contends the trial court erred in allowing the state to impeach her during cross-examination by producing evidence of her prior convictions of DWLSR. I agree with her argument. I would therefore reverse all of the convictions entered and remand the case for new trial.
Before trial commenced, appellant moved in limine to exclude from evidence any reference to her prior driving record, conditioned upon the following stipulation: “On February 11, 2002, at the time I was driving a vehicle my privilege to drive had been revoked pursuant to F.S. 322.264 (Habitual Offender) and had not been reinstated.” Based on the stipulation, the state also agreed not to place the driving record into evidence, and it also acknowledged, notwithstanding the stipulation, that Turben could defend the current DWLSR charge.
The state’s evidence at trial consisted primarily of the testimony of Deputy Sheriff Brownfield, who stated that he stopped the vehicle appellant was driving for the reason that it displayed an inoperative tag light. During the course of his investigation, he discovered that Turben’s driver’s license had been suspended. He then arrested appellant and inventoried the car, finding within it various items of contraband which gave rise to the remaining charges. The deputy admitted that appellant, following her arrest, had stated she was ill and had repeatedly requested to be taken to the hospital. Because, in his opinion, she did not appear to require medical care, he refused her requests, although he did advise the jail staff to keep her under watch.[1]
*1158 Turben was the only witness for the defense. She testified that on the night of her arrest, she had been sorting and collecting certain personal property at the home of a man for whom she provided home health care. She claimed that only two of the items found inside the car were hers, a leather jacket and a pair of dress boots;[2] that the drugs and paraphernalia, a crack pipe, were not hers, and that she was unaware of their existence. Finally, she explained the reason she was driving the car with a license suspended/revoked was to seek immediate treatment at the hospital for a medical condition; she was hemorrhaging, a disorder that had nearly taken her life a year before.
During appellant’s cross-examination, the prosecution focused upon the reason she had given for driving the automobile without a valid license, and the following exchange occurred:
Q And now is it your testimony that if it hadn’t been for this medical problem, that you never would have driven a car because you have no license?
A Oh, yes, ma'am.
Q You never would have done that?
A No, no.
The prosecutor argued that Turben’s testimony had opened her driving history to further questioning. Defense counsel objected, noting that the question was not directed to whether Turben generally drove without a license, but rather it related to the specific reason she had driven the car the night at issue, ie., because of her medical condition. The trial court ruled that, as a result of appellant’s response, the prosecutor could inquire into her prior driving record. Specific details were thereafter elicited regarding each of appellant’s DWLSR violations, which were not occasioned by a medical emergency. Appellant admitted that between 1992 and 1997, she had six such violations.
A trial court’s rulings on the proper scope of cross-examination are subject to an abuse-of-discretion standard of review. See McCoy v. State, 853 So.2d 396, 406 (Fla.2003). See also Winner v. Sharp, 43 So.2d 634, 635 (Fla.1949) (“The admission or rejection of impeaching testimony is within the sound discretion of the trial court.”).
A testifying defendant may “open the door” to otherwise inadmissible evidence of prior offenses by (1) offering a trait of the defendant’s good character, or (2) testifying inaccurately to material facts. See Robertson v. State, 829 So.2d 901, 912 (Fla.2002); Fiddemon v. State, 858 So.2d 1100, 1102 (Fla. 4th DCA 2003); Bozeman v. State, 698 So.2d 629, 630-31 (Fla. 4th DCA 1997). The concept was explained in Boze-man:
To open the door to evidence of prior bad acts, the defense must first offer misleading testimony or make a specific factual assertion which the state has the right to correct so that the jury will not be misled. The “opening the door” concept is based on considerations of fairness and the truth-seeking function of a trial, where cross-examination reveals the whole story of a transaction only partly explained in direct examination.
See Bozeman, 698 So.2d at 630-31 (citations omitted).
In Robertson, the supreme court addressed the permissible scope of impeachment of a testifying defendant. Robertson was charged with, and convicted of, second-degree murder. The state’s theory of *1159 the case was that Robertson intentionally shot the victim during a domestic dispute. The defense’s theory was that the .40-caliber handgun accidentally misfired while Robertson was trying to clean it. During Robertson’s cross-examination, the state was -permitted to elicit testimony, over objection, that Robertson had previously used an assault rifle to threaten other persons. Based on Robertson’s response that he had never endangered anyone close to him with a weapon, the state sought admission of rebuttal testimony from Robertson’s former wife that Robertson confronted her with an AK-47 rifle six years earlier. Again, over defense objection, the trial court concluded the rebuttal testimony constituted proper impeachment.
The supreme court concluded that the prosecutor’s inquiry whether Robertson had threatened others in the past with firearms was improper, for the question did not rebut either Robertson’s defense that the shooting was accidental, or his testimony that he was not familiar with the .40-caliber handgun that had killed the victim. The court ruled, therefore, that “Robertson did not open the door to evidence that he allegedly threatened his ex-wife six years before with an assault rifle by testifying inaccurately to material facts.” Robertson, 829 So.2d at 913. The court instructed that “[i]t is critical for the courts to enforce this restriction on impeachment because the failure to do so would allow the State to circumvent the procedural requirement of section 90.404(2)(b)(l), which requires pretrial notice to the defendant when the State intends to introduce evidence of prior crimes.” Id.
The court next addressed the question of whether the error in admitting the collateral crime-evidence was harmless, noting: “This Court has held that the erroneous admission of irrelevant collateral crimes evidence ‘is presumed harmful error because of the danger that a jury will take the bad character or propensity to crime thus demonstrated as evidence of guilt of the crime charged.’ ” Robertson, 829 So.2d at 913-14 (quoting Castro v. State, 547 So.2d 111, 115 (Fla.1989)). The court concluded the state could not establish beyond a reasonable doubt that the admission of such evidence was harmless, and thereupon reversed the conviction and remanded for a new trial.
Similarly, in the case at bar, appellant neither testified inaccurately to material facts, nor offered a trait of her good character into evidence, which would have served as an “opening of the door” to the admission of evidence of her six prior driving violations between 1992 and 1997. Instead, the cross-examination focused on the circumstances of the DWLSR offense at issue, specifically, the medical-emergency defense. It was in this context the prosecutor asked: “And now is it your testimony that if it hadn’t been for this medical problem, that you never would have driven a car because you have no license?” Appellant’s negative response to the question reasonably related to the events leading up to her effort to reach the hospital, culminating in her being stopped for driving a vehicle with an inoperative tag light. The state’s inquiry was phrased in terms far too broad to require the elicitation of specific evidence contradicting appellant’s testimony that she would not have driven on the night of February 11, 2002, but for her medical emergency.
Although appellant had stipulated the existence of the prior driving violations, she nonetheless defended, as it was agreed she could do, the driving violation in this case, on the ground of medical necessity. In my judgment, the trial court abused its discretion in concluding appellant’s re *1160 sponse to the prosecutor’s question “opened the door” to the specifics of each of her prior driving offenses.[3] I would therefore reverse appellant’s convictions and remand for new trial as to all, because, based on the analysis in Robertson, I am firmly convinced the state has not demonstrated beyond a reasonable doubt that the erroneous admission of collateral-crime evidence as to the DWLSR offense did not as well impact the jury’s assessment of appellant’s credibility as to the drug-related charges.

. Appellant later testified that the same evening of her arrest, she was transported by staff to the hospital for treatment.

. According to appellant, the remaining personal property inside the car belonged to her former employer’s caregivers.

. The State contends that though it is a "close call,” the allowance of the cross-examination which elicited appellant's admissions to prior driving offenses was not an abuse of discretion, and, in any event, the admission was only harmless in regard to the drug-related charges.