WARNER, J.
The appellant challenges his convictions for false imprisonment and carjacking, claiming that the trial court erred in permitting the prosecutor to cross-examine him on a prior conviction of perjury. The prosecutor maintained that Trapp had opened the door to this by testifying that the victim could be charged with perjury if she testified. We conclude that the court *271 erred in permitting the appellant to .be cross-examined in this manner, and we cannot conclude that the error was harmless.
Jennifer Magala lived with her child at the Salvation Army residence. One day she got into her car to go get some cigarettes at a local liquor store with a drive up window. When she arrived at the drive up window, a man whom she said she had never seen before (appellant Trapp) got into the passenger side of her car. He had his hand under his shirt, and she thought he had a gun. He told her to drive away. She tried to park the car, but he made her pull into a driveway close to some pre-construction homes. She got out of the vehicle with her child and tried to retrieve her purse and the child’s bag. Trapp told her to leave it, and he drove off in the car. She had a cell phone in her pocket and immediately called 911. The tape of the 911 call was played for the jury. A police officer arrived very quickly, and she gave him a description of the man, the vehicle and the license plate. A couple of days later she was contacted by police and asked to view a photo line-up from which she identified the defendant, Craig Trapp. Later, her damaged car was recovered.
A couple of months before the trial Trapp called her on her cell phone, telling her not to testify. He made a few calls to her and at one point told her that if she lied, the authorities would take her child away from her.
Only one independent witness testified. Michael McGirt was at his home across the street from where Magala pulled into the driveway and got out of the car. McGirt testified that Magala looked shocked as the man, whom McGirt was able to identify as Trapp, drove off with the vehicle.
Trapp testified in his defense, and his version of events was dramatically different than that of Magala. He maintained that he knew Magala from the Salvation Army, knew that she had three children, and knew the father of her baby. On the day of the incident, he met her outside of the Salvation Army building, and she asked him to help her get some cocaine. After discussing the logistics of acquiring it, he told her he would use her car to go to a housing project where he thought he could obtain it. He denied getting into her car at the liquor store, nor did he use her car without her permission. He didn’t purchase cocaine, because when he got to his source, that person didn’t have any. He was going to go to another place to try to get it. He never called Magala to say he would be late. When he got to the second source for cocaine no one was there, which was a sign that the police had been by. He then went joy riding for a couple of days, drinking, and to visit some friends. Eventually, he ran out of gas. When he flagged down a police officer, he found out that Magala had reported the car as stolen. During his direct testimony, he admitted he had previously been convicted of ten felonies, two of which were crimes of dishonesty.
He admitted that he called Magala four times prior to the trial. On cross-examination, he said he called to say he was sorry because he betrayed her and lied to her. When he found out there were two kidnapping charges against him, he accused her of lying. He told her he didn’t kidnap her, didn’t carjack the car, and didn’t rob her. He denied that he had ever told Magala not to testify. He said she asked him, “What do you want me to do? Sign the waiver?” He said he told her, “No, don’t sign the waiver. Go down and tell the truth or leave it alone.” He told her, “If they catch you in any lies, they’ll charge you with perjury. You will go to jail. Your baby will go to HRS.”
*272 At that point the prosecutor asked, “Let’s talk about perjury,” to which defense counsel posed an objection. The prosecutor claimed that by mentioning the possibility of the victim’s perjury, defendant had opened the door for the prosecutor to question Trapp about a prior perjury conviction of his own.[1] The court overruled the objection, and the prosecutor elicited that Trapp had been convicted of perjury in Mississippi. The prosecutor used this admission in closing argument. She argued that the jury had the opportunity to hear Magala testify, and there was no evidence that she was convicted of a crime. However, when the jury looked at the credibility of Trapp, the prosecutor told them that they should remember that he was a ten-time convicted felon and that two of those crimes involved dishonesty. The prosecutor argued, “You have been able to hear he has been convicted of perjury, and perjury is lying on the stand. He wanted you to believe during the course of the testimony that the victim came in here and committed perjury because he was just borrowing her vehicle. I want you to really think-about the credibility of the story.”
The jury deliberated, requiring the read back of both the independent witness’ testimony and Trapp’s testimony. They informed the court that they were unable to come to an agreement on a verdict. The court gave an Allen charge to which neither side objected, and the jury returned to deliberate and ultimately returned a verdict. On the two kidnapping charges the jury found Trapp guilty of the lesser included charges of false imprisonment. On the count charging carjacking, they found him guilty as charged.
The trial court subsequently sentenced-Trapp. Prior to sentencing, Trapp made a pro se motion for new trial, as did defense counsel. Trapp asserted that the Mississippi perjury charge was actually giving a false name. Both motions were denied. Trapp was sentenced to ten years on the two false imprisonment convictions and, for'the carjacking, he was sentenced as a habitual offender to life with a 30-year minimum mandatory as a prison re-leasee reoffender. He now appeals, arguing that the trial court erred in permitting the state to elicit testimony regarding his prior conviction in Mississippi for perjury.
Evidentiary rulings on the admission of evidence of other crimes are reviewed under an abuse of discretion standard. Zerbe v. State, 944 So.2d 1189, 1193 (Fla. 4th DCA 2006). However, the trial court’s discretion is restricted by the rules of evidence. Nardone v. State, 798 So.2d 870, 874 (Fla. 4th DCA 2001).
Subsection 90.610(1) of the Florida Evidence Code provides:
A party may attack the credibility of any witness, including an accused, by evidence that the witness has been convicted of a crime if the crime was punishable by death or imprisonment in excess of 1 year under the law under which he was convicted, or if the crime involved dishonesty or a false statement regardless of the .punishment....
In Bobb v. State, 647 So.2d 881 (Fla. 4th DCA 1994), we explained that this provision permitted a witness to be questioned regarding prior convictions only as to the number of felonies but not as to whether they involve crimes of dishonesty. A party could not ask a witness whether he or she had been convicted of felonies involving *273 dishonesty or false statement, because the legislature had permitted impeachment by prior felonies, regardless of type. We said:
The subsection makes no distinction as to categories of felonies, but limits use of misdemeanors to the category of ones involving dishonesty or false statement. We believe that allowing further inquiry into whether the felony involved dishonesty or false statement would have the impermissible and unintended effect of elevating certain felonies over others. In essence, we would be approving a more extensive cross-examination of one who has been convicted of grand theft, a felony involving dishonesty, than one convicted of murder, a felony not involving dishonesty or false statement. We cannot read into the statute or the subsection, as adopted by the supreme court, an intent to depart from the long-standing practice of restricting inquiry into the nature of the offense. Accord Cummings v. State, 412 So.2d 436 (Fla. 4th DCA 1982).
Id. at 884. As the statute permits inquiry into the number of misdemeanors but only those involving crimes of dishonesty or false statement, we also clarified that the witness can be asked only two questions. First, “have you ever been convicted of a felony?” Second, “have you ever been convicted of a misdemeanor involving dishonesty or false statement?”
If the witness denies having been convicted, or misstates the number of convictions, counsel may impeach by producing a record of past convictions. However, if the witness admits the conviction, then the inquiry by his adversary may not be pursued to the point of naming the- crime for which he was convicted. Id. See also Dessaure v. State, 891 So.2d 455 (Fla.2004) (citing Fulton v. State, 335 So.2d 280 (Fla.1976)). Because Trapp admitted the number of convictions, including that two were for dishonesty, the prosecutor was not allowed to elicit the nature of the convictions.
The state, however, contends that a witness can also be asked whether the crime is one of perjury, citing Johnson v. State, 361 So.2d 767 (Fla. 3d DCA 1978). There, the court found that while generally the nature of the conviction may -not be revealed, where the conviction was for perjury, an exception is made because of its greater weight against the credibility of a witness than any other crime. However, Johnson interpreted section 90.08, the predecessor to section 90.610. Section 90.08 specifically permitted a perjury conviction to be revealed. “Evidence of such conviction, including the fact that the prior conviction was for the crime of perjury, may be given to affect the credibility -of the said witness, and such conviction may be proved by questioning the proposed witness or, if he deny it, by producing a record of his conviction.” Section 90.610(1) removed the special status of perjury convictions. As noted in Bobb, the section does not elevate one type of felony over another. No cases since the amendment of the statute and revision of the rule have maintained the special status of perjury. Therefore, we adhere to the general and longstanding rule that the nature of the specific conviction may not be inquired into, even if it is a crime of perjury.
 The state argues, as it did at trial, that even if the prosecutor may not have been able to impeach with the specific reference to the perjury conviction, Trapp opened the door through his statement that the victim would commit perjury if she testified against him. In order to “open the door” to the specific nature of the prior conviction, the defense must first offer “misleading testimony or make a specific factual assertion which the state .has *274 the right to correct so that the jury will not be misled.” Bozeman v. State, 698 So.2d 629, 630 (Fla. 4th DCA 1997). “The ‘opening the door’ concept is based on considerations of fairness and the truth-seeking function of a trial, where cross-examination reveals the whole story of a transaction only partly explained in direct examination.” Id. at 631.
We do not understand how Trapp’s admission that he told the witness that if she lied, the authorities would charge her with perjury constitutes opening the door to the prosecutor questioning him about his own conviction of perjury. Trapp did not try to mislead the jury as to a specific factual assertion. As to his prior convictions, he testified truthfully. The jury was not misled in the slightest by Trapp’s asserting that if Magala lied she could be charged with perjury. The door was not opened, and the trial court erred in permitting the prosecutor to bring out the perjury conviction.
The error was not harmless beyond a reasonable doubt, because we cannot say that the error did not affect the verdict. See State v. DiGuilio, 491 So.2d 1129 (Fla.1986). First, the improper admission of collateral crime evidence is presumed harmful. See Czubak v. State, 570 So.2d 925, 928 (Fla.1990). Second, the prosecutor not only specifically elicited the perjury conviction, but she emphasized the conviction in closing argument as a reason that the jury should reject Trapp’s testimony in favor of Magala’s version of events. She specifically referred to the conviction as “lying on the stand” even though the conviction was actually for giving a false name to a police officer. Thus, the prosecutor used the crime of “perjury” to sway the jury not to believe Trapp.
This case primarily turned on a conflict between Magala and Trapp as to who was telling the truth. Trapp’s version could not be discounted as completely fanciful. He knew about Magala, including the number of her children. He had her cell phone number and was calling her after the incident. All of this indicated that Magala may not have been telling the truth about not knowing him. The jury clearly struggled with the case, and the court had to resort to an Allen charge. For all of these reasons, the state has not carried its burden of proving that the error in referring to the perjury conviction was harmless beyond a reasonable doubt.
We reverse appellant’s conviction and sentence and remand for a new trial.
POLEN and LEVINE, JJ., concur.

. As it turns out, the conviction labeled "perjury” was not what would be classified as perjury in Florida. The defendant gave a false name to a police officer in Mississippi, the equivalent of a misdemeanor in Florida.