LEVINE, J.,
concurring specially.
I agree with the majority that this court should reverse appellant’s conviction and remand for a new trial. I believe, however, that the majority is incorrect in stating that the “trial court did not err in finding that Baker opened the door to cross-examination about the fact that Baker previously had been arrested.” While I agree with the majority that the trial court erred in delving “into the nature of the particular arrests,” I also believe that the trial court erred in allowing the state to question appellant about the fact that he had been previously arrested.
At trial, appellant tried to explain why he did not stop right away, although he stated that he had the “intention” to eventually stop his vehicle. Appellant stated he knew his car was going to be towed and that due to “financial” reasons he wanted to stop near his residence. Appellant testified on direct examination:
*761 Q What happens at that point, what’s happening in your mind?
A Well, what happened is, I don’t— my heart was racing. I was — you know, I didn’t know what was going to happen. You know, it’s a dark area. I don’t want to be roughed up by cops. I wanted to get home and I didn’t want them to tow my car. So I was pretty close. I went, stopped. I put on my indicator that I was going to pull over.
On cross-examination, appellant further testified:
Q Well, let me ask you this, though. The reason why you’re suppose[d] to stop when the police have their lights on and their sirens on is because part of it is for officer’s safety; correct?
A Yes, that’s correct. Can I say something?
Q Go ahead.
A Yes, but when I get pulled over, I had to pull over where there’s people because I’ve had a bad experience with the police. As you heard from them, they don’t have cameras in their car. They can do anything, so.
[[Image here]]
Q What is that?
A I don’t want to say too much that ha[s] to do with the case, but I do get pulled over a lot because I used to have hair on my head.
Q You used to have what?
A Hair on my head, dreads. And I was the victim of profiling. I do get profiled a lot, so.
Q So you’re saying, just so we understand, the reason why you knew your car was going to be towed is because you used to have hair on your head?
A No, I said they — I was profiled. That’s what I’m saying. I told you that I’ve been roughed up by cops in the past. You know, I’ve been told things that if I said it to you — I mean, it doesn’t really have nothing to do with it, but I’m just saying my experiences with the law and how they treat me — you know, I knew certain things. Like they try to take advantage of me. I don’t know how to really explain it but — you know, but.
The state at this juncture sought to inquire into appellant’s prior arrests, claiming that appellant had “testified that he had been arrested before.” Specifically, the state argued:
Judge, the defendant on cross examination testified that he had been arrested before. And I’d like to go into that, now that he’s talked about that. He’s talked about being roughed up in the past. He’s talked about — he’s basically done everything he could to beat around it, beat around it, not talking about his prior driving suspensions. He’s talked about his prior arrests. I think it’s only fair that I’m able to go into it.
The state acknowledged that appellant had never been convicted of a felony and did not know whether any of his prior misdemeanor arrests had resulted in a conviction.
Significantly, appellant never explicitly testified that he had been previously arrested. Appellant stated on direct examination that he did not want to be “roughed up” and stated on cross-examination that he had a “bad experience” with the police who used to pull him over and “profile” him because he used to have dreadlocks.
The trial court stated that by offering the defense that appellant had been previously roughed up and profiled by the police, appellant opened the door to his prior arrests. Specifically, the trial court stated:
I feel that the defendant opened the door. I don’t feel the State was prying. *762 He was responding on cross to the State. The defendant wants to get out that he was roughed up by the police. He’s been profiled for his dreads, his hair. That’s what he’s trying to tell the jury. I would say — I’m saying, in trying to get it out, he’s opened the door by saying I’ve been arrested before by the police. I’ll allow you to ask what have you been arrested for, and whatever he says is what he says, because there’s nothing here, you know—
Although the trial court concluded appellant opened the door to inquiry into his prior arrests, once again, nowhere in the record did appellant state, directly or indirectly, as the trial court stated based on the state’s representation, “I’ve been arrested before by the police.”
In Bozeman v. State, 698 So.2d 629 (Fla. 4th DCA 1997), this court found that the admission of prior bad acts was inadmissible, and that the defendant’s testimony on cross-examination did not open the door to the admission of prior bad acts. In Boze-man, the defendant was charged with battery on a police officer and resisting an officer with violence. During trial, the defendant characterized the corrections officer as the aggressor, and the defendant claimed he acted in self-defense. The corrections officer testified that he managed a “special management” division within the jail. Id. at 629. Defense counsel during cross-examination asked the corrections officer if the officer was “extra apprehensive” from the moment he walked in the unit. Id. at 630. The trial court allowed the corrections officer to explain that he was “extra sensitive” upon entering the special management unit because it housed the “worse behaved inmates.” Id.
This court found that the corrections officer’s description of the special management unit was tantamount to admission of inadmissible prior bad acts evidence. This court also determined that the defendant did not open the door to the testimony about the unit because to open the door “the defense must first offer misleading testimony or make a specific factual assertion which the state has the right to correct so that the jury will not be misled.” Id.
In the present case, appellant did not offer facially “misleading” testimony when he stated that he felt he was profiled by the police, when he stated that he had bad experiences with police, or when he stated he was roughed up. The state had introduced evidence that appellant had been stopped because of an expired tag. The fact that appellant was previously arrested was not relevant, and any probative value was clearly outweighed by its obvious prejudicial effect. See Fulton v. State, 385 So.2d 280, 283 (Fla.1976) (noting that arrest “happens to the innocent as well as the guilty”); Modeste v. State, 760 So.2d 1078, 1082 (Fla. 5th DCA 2000) (finding that where defendant testified on direct that he did not know the meaning of the term “cannabis,” he did not open the door to prior arrests for possession of cannabis because he did not “offer misleading testimony or make a specific factual assertion which the state has the right to correct”); Gonzalez v. City of Tampa, 776 So.2d 290, 293 (Fla. 2d DCA 2000) (stating that where prior arrests are not relevant and the probative value is substantially outweighed by the danger of unfair prejudice, “inquiry into the number of times that a person has been arrested, even without conviction, is deemed so prejudicial as to require reversal”); § 90.610, Fla. Stat. (allowing admission, for impeachment purposes, of prior convictions for felonies and crimes of dishonesty or false statement).
Finally, it is disconcerting that appellant’s mere assertion of the defense of alleged profiling would act to open the *763 door to the inadmissible evidence that appellant was arrested. This conceivably could chill the rights of a defendant to testify, present, or even suggest a defense where that defendant’s perception regarding the actions of law enforcement is one of distrust.
Based on all of the above reasons, I would not allow inquiry into appellant’s prior arrests and would find that appellant’s allegations of profiling did not open the door based on the facts of this case.