IN THE DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FIFTH DISTRICT

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED


FREEMAN CROSBY,

      Appellant,

 v.                                                                      Case No.  5D15-2935

STATE OF FLORIDA,

      Appellee.

_____/

Opinion filed June 23, 2017

Appeal from the Circuit Court
for Brevard County,
Jeffrey Mahl, Judge.

James S. Purdy, Public Defender,
Jacqueline Rae Luker and Nancy Ryan,
Assistant Public Defenders, Daytona
Beach, for Appellant.

Pamela Jo Bondi, Attorney General,
Tallahassee, and Carmen F. Corrente,
Assistant Attorney General, Daytona
Beach, for Appellee.


BERGER, J.

      Freeman Edgar Crosby appeals his judgment and sentence for failure to register

as a sexual offender with the local sheriff's office in September 2014 and failure to notify

the Department of Highway Safety and Motor Vehicles (DHSMV) of a change of address

within forty-eight hours, between July 1, 2014, and January 21, 2015, in violation of

section 943.0435, Florida Statutes (2013). He argues that the trial court reversibly erred when it allowed the State to introduce evidence of a prior arrest for failure to register with the sheriff's office and a prior conviction for failure to change his address with the DHSMV. We agree and reverse.

At the outset of trial, the State asserted that it had filed an amended notice of intent to offer evidence of Crosby's arrest for failing to register in March 2014 and his 2006 conviction for failing to report his new address to the DHSMV within forty-eight hours. The State predicted it would offer this evidence during rebuttal. It emphasized that section 943.0435(9)(c), Florida Statutes (2013), provides that "[a] sexual offender who is charged with a subsequent failure to register may not assert the defense of a lack of notice of the duty to register." The trial court reserved ruling.

It was undisputed at trial that Crosby had notice that he was required to register twice each year; once in September, his birth month, and again, six months later in March. This was reiterated to him by an employee of the Indian River County Sheriff's Office, who registered Crosby in July 2014. At that time, Crosby acknowledged in writing his duty to update the address on his driver's license by signing next to that condition on his probation form. Likewise, the paperwork given to him advised him that his next registration month was September 2014. Crosby testified at trial and admitted that he knew he was supposed to register in September and March, and he had done so numerous times in the past. Nonetheless, in September 2014, Crosby failed to register with the Sheriff's Office as a sex offender, and he failed to update his address with the DHSMV, between July 1, 2014, and January 21, 2015.

Crosby claimed he failed to do so because after he registered in July 2014 with the first employee, an Indian River County officer informed him he was "good" for another six months. Specifically, he and his girlfriend both testified that as they were leaving the Sheriff's office, Crosby's girlfriend asked the officer several times if Crosby was "good," and the officer responded, "he's good for six months." Crosby stated that although he knew better and should have registered in September, he relied on the officer's information when he failed to do so. When asked if he now realized after listening to the testimony that he had been misinformed, Crosby stated, "That wasn't right and it was my fault, I should have went back and checked on my birth date, but that's my fault."

Furthermore, Crosby testified that while he knew he was supposed to report his address to the DHSMV within forty-eight hours of an address change, he believed that the Sheriff officer's misinformation also applied to reporting his address to the DHSMV. Even so, he claimed that he went to the DHSMV in order to report his change of address but was informed that because his ID had been stolen, he would have to obtain a new ID before he could update his address. Crosby testified that he was waiting to obtain his out-of-state birth certificate in order to obtain a new ID when he was arrested for the underlying charges. Crosby and his girlfriend both testified that Crosby did not mention his status as a sex offender to the DHSMV employee. Nevertheless, Crosby claimed that the employee became aware of his status as a sex offender when she pulled up his information. However, a DHSMV employee testified that an ID was not required for a sex offender to update their address.

Despite Crosby's concessions, the State maintained that it was entitled to present the jury with evidence that Crosby unreasonably relied on the misinformation provided by

the Indian River County officer, and the DHSMV employee, because he had been convicted in 2006 of failing to report his new address to the DHSMV, and he had been arrested for his failure to register in March 2014. The State insisted that Crosby's testimony as to being misinformed "opened the door" to evidence of Crosby's prior failures to report. Defense counsel countered that the evidence was irrelevant because notice was not in dispute. Moreover, the State could establish that Crosby knew the law without specifying that he knew this information from a prior conviction or arrest, which would be more prejudicial than probative. The trial court agreed with the State, and allowed it to elicit from Crosby that he had been convicted in 2006 for failing to report his change of address to the DHSMV and that he had been arrested for his failure to register in March 2014. The State then highlighted these failures during its closing argument. This was error.

"All evidence tending to prove or disprove a material fact is admissible, unless precluded by law." Wright v. State, 19 So. 3d 277, 291 (Fla. 2009) (citing §§ 90.401-.402, Fla. Stat. (2000)). This includes collateral-crime evidence, such as bad acts not included in the charged offense, when relevant to prove a material fact in issue such as knowledge, or absence of mistake or accident. Id. at 291-92 (citing § 90.404(2)(a), Fla. Stat. (2000)). Collateral-crime evidence, however, is not admissible when it is relevant only to prove bad character or propensity. Id. Moreover, even "[r]elevant evidence 'is inadmissible if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of issues, misleading the jury, or needless presentation of cumulative evidence,'" id., or if it is "submitted to show a defendant's propensity toward commission of the offense or to show a defendant's bad character, with nothing more." Billie v. State, 863 So. 2d 323,

4

327 (Fla. 3d DCA 2003) (citing § 90.403, Fla. Stat. (1997)). "The admission of improper collateral crime evidence is 'presumed harmful error because of the danger that a jury will take the bad character or propensity to crime thus demonstrated as evidence of guilt of the crime charged.'" Wilbur v. State, 64 So. 3d 756, 757 (Fla. 5th DCA 2011) (quoting Wilson v. State, 490 So. 2d 1062, 1064 (Fla. 5th DCA 1986)); accord McCall v. State, 941 So. 2d 1280, 1283 (Fla. 4th DCA 2006) ("Evidence that suggests a defendant has committed other crimes or bad acts can have a powerful effect on the results at trial." (quoting Bozeman v. State, 698 So. 2d 629, 631 (Fla. 4th DCA 1997))).

Evidence of prior convictions to establish knowledge of reporting requirements in cases such as this has no probative value when such knowledge is undisputed. See Horton v. State, 943 So. 2d 1016 (Fla. 2d DCA 2006). Here, it was undisputed that Crosby knew his reporting requirements. In fact, he admitted that he knew he had to report and when he was supposed to report. Furthermore, although Crosby claimed that his failures to report were due to his reliance on misinformation, his prior arrest and prior conviction were not necessary to establish that his reliance on such misinformation was unreasonable. For example, the Indian River County employee testified that when she registered Crosby in July 2014, she specifically told him he had to reregister in September 2014. Furthermore, there was evidence that Crosby failed to report six months later in January, showing that he did not actually believe he was not required to register until six months after his July registration. Even less relevant is his 2006 conviction, as it does not rebut Crosby's defense that he attempted to register his new address with DHSMV but was told that he was unable to do so until he had obtained an ID. There was no

5

evidence to establish that in 2006, as a result of his conviction, he was informed that he did not need an ID to update his address with DHSMV.

The State contends that any error was harmless because Crosby readily admitted that he knew he had to report in March and September every year. However, his admissions establish why the evidence of his arrest and conviction was not harmless. Because his knowledge, despite the misinformation, was undisputed, the objected-to evidence was not relevant to support a disputed element of the crimes charged. Additionally, there was less prejudicial evidence that the State could have utilized to establish that Crosby was not misinformed or that his reliance on any misinformation was unreasonable. Thus, we conclude that the State has failed to prove that there was no reasonable possibility that the error in admitting the collateral-crime evidence affected the verdict. See State v. DiGuilio, 491 So. 2d 1129, 1139 (Fla. 1986). Accordingly, we are compelled to reverse Crosby's convictions in this case and remand for a new trial.

REVERSED and REMANDED for new trial.

WALLIS and LAMBERT, JJ., concur.

6